PENNSYLVANIA SUGAR REFINING CO. v. AMERICAN SUGAR RE-FINING CO. et al.

(Circuit Court of Appeals, Second Circuit. December 15, 1908.)

No. 74.

1. APPEAL AND ERROR (§ 919*)—REVIEW—PRESUMPTIONS.

Where defendant's motion to dismiss the complaint for failure to state a cause of action was granted, it must be assumed on a writ of error that plaintiff, if given an opportunity, would have established the allegations of the complaint.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 919.*]

2. MONOPOLIES (§ 17*)—RESTRAINT OF TRADE—STATUTES.

If a contract in restraint of trade only affects products within the limits of the state, it is subject only to state laws, any remote or incidental effect on interstate commerce being insufficient to bring it within the federal law; but if, in addition, it attempts to control the disposition of the manufactured article across state lines, it then directly affects interstate commerce, and is within the prohibition of the federal act.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 17.*]

3. MONOPOLIES (§ 17*)—CONSPIRACY IN RESTRAINT OF INTERSTATE COMMERCE—MONOPOLIZING MANUFACTURE AND SALE.

Plaintiff alleged that having been engaged in the purchase of raw sugar in different states and in their transportation to Pennsylvania, where it manufactured the same into refined sugar and sold the same in interstate commerce, it suspended business during the Spanish War, and enlarged its refinery, preparing and intending to resume business, when defendants conspired to prevent it from engaging in business; and accomplished this result by inducing plaintiff's majority stockholder to accept a loan, pledging his stock as collateral with voting power, by which defendant elected new directors, who voted that plaintiff should do no business; that the object of such conspiracy was to prevent plaintiff from engaging in business in competition with defendant. Held, that the conspiracy alleged directly operated not alone on the manufacture of sugar within the state of Pennsylvania, but on interstate commerce in the transportation and delivery of both the raw material and the manufactured product, and was therefore within the federal anti-trust act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]).

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. § 17.*]

4. MONOPOLIES (§ 28*)—RESTRAINT OF TRADE—INTERSTATE COMMERCE—CONTINUANCE OF BUSINESS.

Where plaintiff, in a suit to recover treble damages under the federal anti-trust act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]), alleged that plaintiff had been engaged in interstate commerce, but had temporarily ceased business and enlarged its refinery at large expense, and prepared and intended to resume business as before, but had been prevented from doing so by defendant's alleged acts, the complaint was not demurrable as showing that plaintiff was not engaged in business and had no established business to injure at the time of the conspiracy.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 28.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5.** Monopolies (§ 28*) — Restraint of Trade — Anti-Trust Statute — Complaint.

A complaint to recover damages under the federal anti-trust act (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]) charged that defendants combined and conspired to prevent plaintiff from engaging in business and in interstate commerce, and induced S., who was a majority stockholder in plaintiff corporation, to accept a loan from defendant company and pledge as security a majority of plaintiff's capital stock with the absolute voting power; that defendant used such power to elect directors favorable to carrying out the object of the conspiracy, which defendant did by voting that plaintiff should not engage in business—the complaint stated a conspiracy in restraint of interstate trade and commerce in violation of the act.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 28.*]

**6.** Corporations (§ 317*) — Conspiracy — Directors.

A corporation cannot conspire that its own directors shall be unfaithful to it.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 317.*

Liability of corporation for conspiracy, see note to Hindman v. First Nat. Bank, 39 C. C. A. 17.]

**7.** Corporations (§ 317*) — Directors — Wrongful Acts — Effect as to Corporations.

Action of directors in the name of their corporation, detrimental to its interests and in bad faith, is, with respect to them, the act of the corporation in name only.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 317.*]

**8.** Corporations (§ 317*) — Misconduct of Directors — Rights of Corporation — Damages.

Directors and others conspiring to obtain action by the directors against the interest of the corporation for wrongful and ulterior purposes are liable to the corporation for the damages caused thereby.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 317.*]

**9.** Corporations (§ 317*) — Directors — Wrongful Acts of Majority — Corporation in Pari Delicto.

Where defendants obtained control of plaintiff corporation for the purpose of ruining it and to prevent plaintiff from ever becoming a competitor, and carried out such unlawful purpose by vote of a majority of plaintiff's stock that plaintiff should cease business against the protest of the minority stockholders, the corporation and defendants were not in pari delicto.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 317.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 160 Fed. 144.

H. Snowden Marshall and George H. Earle, Jr. (Frank S. Black, Joseph De F. Junkin, and John W. Hutchinson, Jr., on the brief), for plaintiff in error.

John G. Johnson (Henry W. Taft, on the brief), for defendants in error American Sugar Refining Co. and John E. Parsons.

Howard Taylor, for other defendants in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This is an action for the recovery of treble damages under the seventh section of the federal anti-trust

statute (Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]).

The complaint alleges, in substance, that the plaintiff, a Pennsylvania corporation, had from the year 1883 to the year 1898 been engaged in the business of importing raw sugar from other states and foreign countries into the state of Pennsylvania, manufacturing it there into refined sugar, and exporting the manufactured product to other states and countries; that the plaintiff ceased carrying on such business in 1898 on account of the Spanish War, and had not actually resumed at the time of the conspiracy complained of, but at such time had erected a new and enlarged sugar refinery upon its premises in said state of Pennsylvania, and was prepared and intended to resume and continue the business which it had before carried on; that the defendants conspired to prevent the plaintiff from re-engaging in business, and that they accomplished their object by inducing one Segal, who indirectly held a controlling stock interest in the plaintiff corporation, to accept a loan of a large sum of money and to turn over to them such interest, with the voting power attached thereto, which they exercised to elect new directors and caused such directors to vote that the plaintiff should do no business. The defendants answered, and the case came on for hearing, when a motion was made to dismiss the complaint upon the ground that it failed to state a cause of action. This motion was granted by the trial court.

Upon this writ of error we must assume that the plaintiff, if given the opportunity, would have established the allegations of its complaint—would have shown that it was directly engaged in importing raw sugar, refining it, and exporting the finished product; that it temporarily ceased to do business, and was prepared to resume with larger facilities, when, through the defendants' conspiracy, it was prevented from so doing.

The defendants first contend that the conspiracy stated in the complaint relates to manufacture—to production—and, consequently, does not directly restrain interstate commerce, in violation of the anti-trust statute. This contention is founded upon the decision in United States v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325, upon which the trial court based its decision. A comparison of the Knight Case with the case at bar shows some striking superficial resemblances. Both relate to actions of the American Sugar Refining Company in obtaining control of independent sugar refining companies in Philadelphia. But there is this fundamental distinction between them: The one was an agreement for the restriction of competition which related directly to manufacture and only indirectly to interstate commerce; the other was a conspiracy to prevent a manufacturer from engaging in business which necessarily directly restrained interstate commerce. An agreement or combination for the elimination of competition, from an economic point of view, may not operate in restraint of trade. It may actually develop and increase trade. Such an agreement, however, from a legal viewpoint, is necessarily in restraint of trade. The law regards competition as the life of trade, and so that which restricts competition restrains trade. But a contract in re-

straint of trade may or may not be in restraint of interstate trade. If it directly affect only production within the limits of a state, it is in restraint of intrastate trade and is subject only to state laws. Any remote or incidental effect upon interstate trade is insufficient to bring it within the federal enactment. If, however, the contract go further and, for example, control the disposition of the manufactured article across state lines, it directly affects interstate commerce, and thus may contravene both state and national laws. On the other hand, a conspiracy to prevent a manufacturer who procures his supplies and disposes of his products by means of interstate commerce from engaging in business at all necessarily places restraints upon such commerce. Its flow is restricted and interrupted. The importation and exportation of articles of commerce are directly prevented, and none the less so because the conspiracy may be of so wide a scope as to interfere with interstate commerce also.

Now, in the Knight Case there was an agreement for the elimination of competition, and not a conspiracy. In that case the United States brought suit to annul certain contracts by which the American Sugar Refining Company acquired, through the exchange of shares, controlling interests in several competing refineries in Philadelphia. These refineries continued in operation after such acquisition of control, and the amount of sugar refined in Philadelphia was increased. The arrangement had for its object a unification of interests in the business of sugar refining in Pennsylvania. No intention to place any restraint upon interstate commerce was shown, and the contracts in question bore no direct relation to such commerce. Any restraint which was created by legal construction was indirect and remote. In the present case the elements of agreement and combination for the elimination of competition are wholly absent. The object of the conspiracy was to exclude the plaintiff from business, not to unite with it. The refinery was to be shut down and not operated. The interstate shipments which would have resulted from its operation were prevented. Instead of there being a development of business and increase of traffic, the possibility of there being any traffic at all was excluded.

The decision in the Knight Case was that upon the proofs the agreements there in question related to manufacture—to production—and were not in restraint of interstate commerce, although they may have affected such commerce incidentally and indirectly. But there is present in this case that which Mr. Chief Justice Fuller said was absent in the Knight Case, 156 U. S. 1, 17, 15 Sup. Ct. 249, 39 L. Ed. 325:

"There was nothing in the proofs to indicate any intention to put a restraint upon trade or commerce, and the fact, as we have seen, that trade or commerce might be indirectly affected, was not enough to entitle complainants to a decree."

In the present case the proofs, if supporting the allegations, would show a conspiracy which could have no other possible result than to put a direct restraint upon interstate commerce. The complaint alleges specifically that the object and intention of the conspirators was to prevent interstate importation and exportation as well as intrastate manu-

facture. "The object and intention of the combination determined its legality." Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488. See, also, Swift v. United States, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518. Had the complaint merely charged a conspiracy to prevent the plaintiff from procuring its materials by means of interstate commerce, it would manifestly have stated a conspiracy prohibited by the statute. In our opinion, it stated such a conspiracy none the less when it went further and charged a conspiracy to prevent the plaintiff from engaging in any business at all, interstate or intrastate. This extract from the opinion of Mr. Justice Holmes in Swift v. United States, 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518, is pertinent:

"Although the combination alleged embraces restraint and monopoly of trade within a single state, its effect upon commerce among the states is not accidental, secondary, remote, or merely probable. On the allegations of the bill the latter commerce no less, perhaps even more, than commerce within a single state, is an object of attack."

See, also, Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488.

It must be clearly borne in mind that the defendants in this case are not charged simply with preventing the plaintiff from engaging in a manufacturing business. If they were, the Knight decision would undoubtedly be applicable. They are expressly charged also with preventing the plaintiff from engaging in interstate commerce—with preventing the importation of raw materials and the exportation of the manufactured product. In fact, the allegations go so far as to charge a conspiracy to prevent the interstate transportation of materials and products. In the face of these allegations this court cannot say, as a matter of law, that the main purpose of the conspiracy was to prevent manufacture, and that its effect upon interstate trade was incidental and remote. The combination in the Knight Case was for the purpose of procuring control of the corporations in question, and, undoubtedly, of monoplizing the sugar business. The purpose of the conspiracy in the present case was not only to obtain control of the plaintiff corporation, and thus doubtless acquire a monopoly, but to exercise the power of control so obtained to wholly prevent the plaintiff from engaging in a business, the carrying on of which necessarily involved interstate commerce.

If we are to apply in the present case the principles of a case involving a contract or combination for the elimination of competition, those stated in Addyston Pipe, etc., Co. v. United States, 175 U. S. 239, 20 Sup. Ct. 96, 44 L. Ed. 136, are more nearly applicable than those of the Knight Case. In the Addyston Pipe Case Mr. Justice Peckham said, distinguishing the Knight Case:

"The direct purpose of the combination in the Knight Case was the control of the manufacture of sugar. There was no combination or agreement, in terms, regarding the future disposition of the manufactured article; nothing looking to a transaction in the nature of interstate commerce. The probable intention on the part of the manufacturer of the sugar to thereafter dispose of it by sending it to some market in another state was held to be immaterial and not to alter the character of the combination. * * * The case was decided upon the principle that a combination simply to control manufacture

was not a violation of the act of Congress, because such contract or combination did not directly control or affect interstate commerce; but that contracts for the sale and transportation to other states of specific articles were proper subjects of regulations, because they did form part of such commerce. We think the case now before us involves contracts of the nature last above mentioned, not incidentally or collaterally. but as a direct and immediate result of the combination engaged in by the defendants. * * * If, therefore, an agreement or combination directly restrains, not alone the manufacture, but the purchase, sale, or exchange of the manufactured commodity among the several states, it is brought within the provisions of the statute. The power to regulate such commerce- that is, the power to prescribe the rules by which it shall be governed—is vested in Congress, and, when Congress has enacted a statute such as the one in question, any agreement or combination which directly operates, not alone upon the manufacture, but upon the sale, transportation, and delivery of an article of interstate commerce, by preventing or restricting its sale, etc., thereby regulates interstate commerce to that extent, and to the same extent trenches upon the power of the national Legislature and violates the statute."

In this case the complaint alleges that the plaintiff had been engaged in the purchase of raw materials in different states and in their transportation to Pennsylvania, in the manufacture of the refined sugar there, and in the sale of the manufactured product and its transportation to other states and countries. It further alleges that the object of the conspiracy was to prevent the plaintiff from re-engaging in all those undertakings, which was accomplished by preventing it from engaging in business at all. The conspiracy directly operated not alone upon the manufacture, but upon the purchase, sale, transportation, and delivery of an article of interstate commerce by preventing altogether such purchase, sale, transportation, and delivery, as well as such manufacture. And thereby, in the words of the Addyston Pipe Case, it "regulates interstate commerce to that extent, and to the same extent trenches upon the power of the national Legislature and violates the statute."

Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, is, however, the case which, more than any other, seems of controlling authority here. In that case, like this, there was no combination or agreement for the elimination of competition, but a conspiracy to prevent a manufacturer from carrying on his business. Mr. Chief Justice Fuller said (page 300 of 208 U. S., page 309 of 28 Sup. Ct. [52 L. Ed. 488]):

"The averments here are that there was an existing interstate traffic between the plaintiffs and citizens of other states, and that for the direct purpose of destroying such interstate traffic defendants combined not merely to prevent plaintiffs from manufacturing articles then and there intended for transportation beyond the state, but also to prevent the vendees from reselling the hats which they had imported from Connecticut, or from further negotiating with plaintiffs for the purchase and intertransportation of such hats from Connecticut to the various places of destination. So that, although some of the means whereby the interstate traffic was to be destroyed were acts within a state, and some of them were in themselves, as a part of their obvious purpose and effect, beyond the scope of federal authority, still, as we have seen, the acts must be considered as a whole, and the plan is open to condemnation, notwithstanding a negligible amount of intrastate business might be effected in carrying it out. If the purposes of the combination were, as alleged, to prevent any interstate transportation at all, the fact that the means operated at one end beyond physical transportation com-

menced, and at the other end after the physical transportation ended, was immaterial."

The averments in the present complaint cannot be distinguished in principle from those appearing in the Loewe complaint. In both it is alleged that the respective defendants combined not only to prevent the respective plaintiffs from manufacturing articles intended for interstate transportation, but also to prevent them from engaging in interstate transportation and traffic at all. It is true that in this case, as in that case, the conspiracy affected intrastate as well as interstate business, but, as we have already seen, it affected the latter none the less because it affected the former.

For these reasons, we think that the conspiracy charged in the complaint does not relate wholly to production within the state of Pennsylvania, and that the present case is not controlled by the Knight decision.

The defendants next contend that the complaint fails to state a cause of action, because it appears that the plaintiff was not engaged in business at the time of the conspiracy; that it had no established business to injure. But in the very recent case of Thomsen v. Union Castle Mail Steamship Co. (decided October, 1908) 166 Fed. 251, this court said: "It is as unlawful to prevent a person from engaging in business as it is to drive a person out of business." A person has a legal right to engage in a lawful business. If he is unlawfully excluded from exercising this right, when he is prepared and intends to exercise it, he suffers an injury for which the law awards damages—he is "injured" within the meaning of the federal statute. He may be unable to prove substantial compensatory damages, but in stating the infringement of his legal rights he states a cause of action at least for nominal damages, and may, perhaps, so state it as to call for exemplary damages. Scott v. Donald, 165 U. S. 58, 17 Sup. Ct. 265, 41 L. Ed. 632.

But the defendants further urge that the complaint merely shows a naked intention to engage in interstate commerce, and that legal damages cannot be predicated upon the prevention of the carrying out of any such intention. We cannot so regard the allegations of the complaint. It is averred that the plaintiff had been engaged in interstate commerce, had temporarily ceased to do business, had built a new refinery at great expense, and was prepared and intended to resume business as before. Something more than a mere mental intention to engage in interstate commerce is involved when a corporation spends millions of dollars in building a sugar refinery which is only of use when operated and which can only be operated by engaging in interstate commerce. The amount of money actually lost in the enterprise cannot be regarded as wholly speculative and problematical.

It is next contended that the complaint failed to show that the defendants did anything which was "forbidden or declared to be unlawful" by the federal anti-trust statute. As already shown, however, the complaint charges that defendant combined and conspired to prevent the plaintiff from engaging in business and in interstate commerce; that they induced Segal to accept a loan from the American Sugar Refining Company and to pledge as security therefor a majority of the

capital stock of the plaintiff corporation under such conditions that the American Company obtained the absolute voting power thereon; that the American Company used this power to elect directors favorable to the carrying out of the object of the conspiracy, and that such directors accomplished such object by voting that the plaintiff should not engage in business. The substance of the charge is that the defendants obtained the control of the plaintiff corporation to ruin it and to prevent it from ever becoming a competitor of the American Company, and that they carried out their unlawful purpose in violation of the trust imposed upon the majority stockholders for the benefit of the minority, and by inducing directors to be unfaithful in the performance of the duties of their office. In our opinion, the complaint sufficiently states a conspiracy in restraint of interstate trade and commerce within the meaning of the federal statutes. Indeed, no more effectual means to make a conspiracy effective could be devised than the manipulation, in the manner described in the complaint, of the control afforded by holding a majority stock interest—manipulation wholly in violation of the trust obligation of a majority stockholder to the minority and of the directors to all the stockholders.

It is finally contended that, if the conspiracy was illegal, the plaintiff was a party to it, and cannot maintain an action against the other parties. The answer to this contention is that a corporation cannot conspire that its own directors shall be unfaithful to it. Action which directors take in the name of their corporation, detrimental to its interests and in bad faith, is, with respect to them, the act of the corporation in name only. Directors and other persons entering into a conspiracy to obtain such action for wrongful and ulterior purposes are liable to the corporation for the damages caused thereby. Nothing is shown in this case to call for the application of the doctrine, "In pari delicto potior est conditio defendentis."

It may be that the plaintiff will be unable to establish the allegations of its complaint—will be unable to show any such unlawful conspiracy as it alleges. But the allegations are very broad and sweeping. They state a cause of action, and the plaintiff is entitled to an opportunity to prove them if it can.

There was error in dismissing the complaint, and, accordingly, the judgment of the Circuit Court is reversed.