AMERICAN BANANA CO. v. UNITED FRUIT CO.

(Circuit Court of Appeals, Second Circuit. December 15, 1908.)

No. 65.

1. MONOPOLIES (§ 28*)—ANTI-TRUST ACT—EXISTING BUSINESS.

In order to state a cause of action for damages for conspiracy in restraint of interstate commerce under the federal anti-trust act, it is not necessary to allege injury to an existing business, though it is necessary to state facts showing an intention and preparedness to engage in business, it being as unlawful to prevent a person from engaging in business as it is to drive one out of business.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 28.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MONOPOLIES (§ 28*)—CONSPIRACY IN RESTRAINT OF INTERSTATE COMMERCE—COMPLAINT—INCIDENTAL ALLEGATIONS.

Where a complaint for conspiracy in restraint of foreign commerce in violation of the federal anti-trust act charged injury to plaintiff's plantation by Costa Rican officials resulting from an alleged conspiracy with defendant, and also that defendant controlled the banana market in the West Indies and in Central and South America and prevented plaintiff from buying and shipping bananas to the United States and selling them to its great profit, which it would otherwise have done, such latter allegation would be treated as incidental to plaintiff's demand for damages for injury to its plantation, in the absence of an allegation that plaintiff had invested any money in preparing to engage in buying, shipping, and selling bananas as a business independent of the operation of its own plantation.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 28.*]

3. INTERNATIONAL LAW (§ 12*)—ACTS OF FOREIGN GOVERNMENT.

Where Costa Rica was de facto sovereign over that part of Panama, including the McConnell concession, at the time plaintiff's plantation and railroad in such concession was injured by the acts of the Costa Rican soldiers and officers acting under governmental authority, such acts were immune from investigation or review by the courts of the United States.

[Ed. Note.—For other cases, see International Law, Dec. Dig. § 12.*]

4. PRINCIPAL AND AGENT (§ 14*) — GOVERNMENT AND INFORMER — INFORMER'S LIABILITY.

Where plaintiff's plantation in Panama, over which the Costa Rican government exercised de facto sovereignty, was injured through the acts of the Costa Rican officers and soldiers acting pursuant to an alleged conspiracy between the officers of the Costa Rican government and defendant, plaintiff's competitor in business, defendant could not be charged with the acts of such Costa Rican officials on the theory that the Costa Rican government merely acted as defendant's agent in carrying out its desires, there being nothing to show that the Costa Rican government was not acting on its own responsibility and in its governmental capacity.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 14.*]

5. TORTS (§ 22*)—JOINT TORT-FEASORS—GOVERNMENT AND INDIVIDUAL.

Where officers and soldiers of Costa Rica committed depredations on plaintiff's plantation in Panama, through an alleged conspiracy between defendant and the governing officials of Costa Rica, defendant and the Costa Rican government could not be regarded as joint tort-feasors.

[Ed. Note.—For other cases, see Torts, Dec. Dig. § 22.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

For opinion below, see (C. C.) 160 Fed. 184.

Wheeler, Cortis & Haight (Everett P. Wheeler, Clarence B. Smith, and John W. Griffen, of counsel), for plaintiff in error.

Strong & Cadwalader (Moorfield Storey and Henry W. Taft, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This is an action for the recovery of treble damages under the seventh section of the federal anti-trust statute (Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]).

The complaint alleges, in substance, that the defendant corporation was organized in 1899, and thereafter at all times engaged in the business of importing bananas into the United States from Central and South America; that in 1899 and subsequent years, for the purpose of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

monopolizing the banana trade between such countries, of regulating prices, controlling production, and preventing competition, the defendant acquired the property and business of several competing corporations and individuals, entered into contracts regulating prices and restricting business with other competitors, acquired controlling stock interests in still others, and organized a common selling agent for all; that in April, 1903, one McConnell began to make a banana plantation upon the northerly bank of the Sixola river in Panama, then a part of the United States of Colombia, and to build a railway connecting said plantation with the nearest port and affording the only practicable means of access to the plantation; that said McConnell obtained the transfer of a concession to build such railroad from an official of the United States of Colombia, who subsequently recommended to his government that Costa Rica be allowed to administer the territory through which it was to run, notwithstanding such territory had previously been awarded to Colombia by an award of the President of France acting in accordance with a treaty between Colombia and Costa Rica; that in November, 1903, that part of the United States of Colombia known as the "Department of Panama," and including the territory in question, revolted and became the republic of Panama; that in June, 1904, the plaintiff corporation, which had been organized for the purpose of growing and buying bananas in Central America and importing them into the United States, purchased said plantation and concession from McConnell, and spent large sums of money in the development of the plantation and construction of the railroad; that in July, 1904, Costa Rican soldiers and officials, instigated and induced by the defendant, seized a portion of the plaintiff's plantation and a cargo of supplies recently landed thereon; that said soldiers and officials have continued to forcibly occupy and hold said portion of said plantation, have stopped the construction and operation of said railroad, and have wholly prevented the plaintiff from carrying on its business; that the plaintiff has endeavored to induce the government of Costa Rica to withdraw its soldiers and officials, but such government has refused to do so: that the defendant has purchased an alleged title to the plaintiff's plantation, and has instituted certain proceedings thereunder, and that the defendant and its associates have combined to prevent the sale of bananas to other exporters than themselves, and have made such arrangements with growers that there is no market in which bananas can be purchased by the plaintiff for export.

The defendant answered, and the case came on for trial, when the defendant moved to dismiss the complaint upon the ground that it failed to state a cause of action. This motion was granted by the trial court, and the plaintiff brings this writ of error.

The seventh section of the federal and anti-trust statute, upon which this action is brought, provides that any person "injured in his business or property" by reason of anything forbidden or declared to be unlawful by the act may recover threefold damages. It is then of first importance to ascertain what actions of the defendant have injured the plaintiff. If the complaint contains allegations of actions which have not had that effect, it is unnecessary to consider them, however much they may contravene the other provisions of the statute. Thus

the averments concerning the various combinations for the elimination of competition, standing by themselves, are immaterial. If the defendant had not done the things which injured the plaintiff, no cause of action would be stated, even if it were apparent that the pre-existing combinations had been of the most unlawful nature. So the allegations concerning the purchase of the alleged title and the communication of the Colombian official to his government are immaterial, because it does not appear that they injured the plaintiff.

The only damages claimed in the complaint are—stated inversely to the order of their importance: (1) For the injury resulting from the securing of control by the defendant and its associates of the banana market. (2) For the injury to the plantation, business, and railroad inflicted by the Costa Rican officials.

Now, in order to state a cause of action for damages under the statute, it is not necessary to aver an injury to an existing business. As said by this court in Thomsen v. Union Castle Mail Steamship Co. (decided October, 1908) 166 Fed. 251, "it is as unlawful to prevent a person from engaging in business as it is to drive a person out of business." See, also, Pennsylvania Sugar Refining Co. v. American Sugar Refining Co. (decided this day) 166 Fed. 254. But it is necessary to state facts showing an intention and preparedness to engage in business. Thus in the Pennsylvania Sugar Refining Case it was alleged that the plaintiff had erected and equipped a sugar refinery, and was prepared and intended to engage in the manufacture and sale of sugar, when it was prevented from so doing by the acts of the defendants. In the present case, however, it is not alleged that the plaintiff had made any preparations to engage in the business of buying bananas independently of the operation of its own plantation, nor that it desired or intended to engage therein as a separate and independent business. It is not averred that the plaintiff invested any money in preparing to engage in any such independent business; nor does the extent to which, nor even the country in which, it desired or intended to engage therein, appear. The only allegation is that the defendant's control of the banana market in the West Indies and Central and South America prevented the plaintiff "from buying any bananas and shipping them and selling them in the United States, as it would otherwise have done to its great profit." But in view of the other allegations of the complaint, and of the fact that this demand is stated as the basis for claiming "additional" damage, we think that it should be treated as being incidental to the more substantial demand for damages for injuries to the plantation and railroad—that the plaintiff intended to deal in bananas from other plantations only as auxiliary to its principal business of growing and shipping its own fruit. Certainly the allegations are too indefinite and uncertain to state a cause of action based upon an independent and separate demand. Therefore, unless our inquiry shows that the complaint states a cause of action growing out of the acts of the Costa Rican officials, we must hold that it was properly dismissed.

In pursuing this inquiry we may consider, in addition to the facts stated in the complaint, those appearing in the letter of Secretary Root

to the American minister at Panama. In this letter the Secretary says, among other things:

"In the Department's conception of this matter, Costa Rica exercises at present a temporary de facto sovereignty over the territory included in the McConnell concession, subject of right to be diverted at any time at the will of Panama, but actually continuing until such time as the pending boundary treaty is ratified. * * *

"In considering the present connection of Panama with the territory in question, it would appear that that state has consented that Costa Rica continue as the de facto sovereign until the ratification of the treaty. If Panama should interfere and seek to exercise at present jurisdiction north of the Sixola river, this would be inconsistent with her recognition of Costa Rica's temporary sovereignty in that district. In the view of the Department, as long as the latter government is the sovereign in possession, whatever attributes that accompany or attend possession should be conceded to her, including the right to control by taxation, or otherwise, importations, etc., at Gadocan."

Whatever, therefore, may have been the Loubet award or its effect with respect to the boundary line between Costa Rica and Colombia —whatever may have been the rights de jure—we must start with the proposition that the plaintiff's plantation at the time of the acts in question was in territory over which Costa Rica was de facto sovereign. We must also treat the acts of the soldiers and officials of Costa Rica as acts done by the authority of the government of that country. The complaint shows that that government in effect ratified such acts and refused to withdraw from the plaintiff's plantation.

Now the only theory upon which the plaintiff can be awarded damages against the defendant is that it is responsible for unlawful acts instigated by it. It cannot be held responsible for procuring that to be done by authority of the government of Costa Rica which was lawful. Consequently this court is called upon to investigate the lawfulness of acts done under the authority of a foreign independent state. But this court cannot undertake any such investigation. The acts complained of were adopted by the government of a sovereign state in its political capacity and in the exercise of its de facto sovereignty. The question of their legality or illegality cannot be determined by the courts of another country.

In Underhill v. Hernandez, 65 Fed. 577, 579, 13 C. C. A. 51, 38 L. R. A. 405, this court said:

"Conditions of comity and of the highest expediency require that the conduct of states, whether in transactions with other states or with individuals, their own citizens, or foreign citizens, should not be called in question by the legal tribunals of any other jurisdiction. The citizens of a state have an adequate redress for any grievance at its hands by an appeal to the courts or the other departments of their own government. Foreign citizens can rely upon the intervention of their respective governments to redress their wrongs even by a resort, if necessary, to the arbitrament of war. It would be not only offensive and unnecessary, but it would imperil the amicable relations between governments and vex the peace of nations, to permit the sovereign acts or political transactions of states to be subjected to the examination of the legal tribunals of other states."

And in affirming the judgment in the Hernandez Case the Supreme Court of the United States said (168 U. S. 251, 18 Sup. Ct. 84, 42 L. Ed. 456):

"Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves."

In Webb's Pollock on Torts, p. 137, it is said:

"An act done by the authority, previous or subsequent, of the government of a sovereign state in the exercise of de facto sovereignty, is not examinable at all in the courts of justice of any other state."

See, also, Duke of Brunswick v. King of Hanover, 2 H. L. Cas. 1, affirming 6 Beav. 1, 13 L. J. Ch. 107; Nabob of Arcot v. East India Co., 4 Brown, Ch. 131; Hatch v. Baez, 7 Hun (N. Y.) 590.

As already indicated, it is sufficient to exclude an examination by this court of the lawfulness of the acts in question that they were committed in territory over which Costa Rica was the de facto sovereign. Indeed, had that government been merely a de facto government, its acts could not be called in question. See Hernandez Case, 65 Fed. 577, 582, 13 C. C. A. 51, 38 L. R. A. 405. And the letter of the Secretary of State here shows that Panama even consented that Costa Rica should exercise temporary sovereignty over this territory until the ratification of a treaty between them.

Upon principle and authority, it follows that Costa Rica is entitled to immunity from any investigation of its sovereign acts by this court. The plaintiff, however, asserts that this immunity is only an immunity from suit which has no bearing upon the defendant's liability. But, as we have seen, the immunity is far broader than this. The validity of an act adopted by a sovereign state cannot be inquired into at all —directly or collaterally—by the courts of another state. Relief must be sought in the courts of the former state or through diplomatic channels.

It is further urged that the Costa Rican government should be treated as the agent of the defendant, and that the defendant should be held responsible as principal for its acts. But the relation of a government acting in its political capacity to a person who furnishes the information upon which it acts cannot, from the very nature of things, be that of principal and agent. The early case of Rafael v. Verelst, 2 Wm. Black, 1055, cited by the plaintiff, does not sustain any such proposition. The very point of that case was that the Nabob who seized the plaintiff was not acting as sovereign, but contrary to his own inclination—as "a mere machine, an instrument and engine of the defendant." In the present case, although instigated by the defendant, there is nothing to show that the Costa Rican government failed to act upon its own responsibility as a sovereign state, or that it ever professed to act in behalf of the defendant.

Upon similar principles, there is no ground for contending that the defendant and the government of Costa Rica were joint tort-feasors. That relation, too, is wholly inconsistent with the relation of a sovereign government acting in its political capacity—as the government of Costa Rica did—to an informer, no matter how malicious the latter might be.

For these reasons, it is held that the acts which resulted in the injury to the plaintiff's business and property were those of the government of Costa Rica, for which the defendant cannot here be held responsible. Consequently the complaint—based upon those acts—fails to state a cause of action.

The judgment of the Circuit Court is affirmed.