Barney PELLER, Plaintiff-Appellant,

v.

INTERNATIONAL BOXING CLUB, Inc., a corporation of Illinois; Chicago Stadium Corporation, a corporation of Delaware; James D. Norris; Arthur M. Wirtz; Truman K. Gibson, Jr.; Irving Cohen; Rocky Graziano; George Gainford; and Ray Robinson, Defendants-Appellees.

No. 11525.

United States Court of Appeals Seventh Circuit.

Dec. 1, 1955.

Sheldon O. Collen, Chicago, Ill., for appellant.

Charles H. Watson and Lowell H. Jacobson, Peabody, Westbrook, Watson and Stephenson, Chicago, Ill., for appellees International Boxing Club, Inc., of Illinois, and others.

Elmer M. Leesman, Friedlund, Levin & Friedlund, Chicago, Ill., for appellees International Boxing Club of New York, Inc., and another.

Vincent D. McConnell, Chicago, Ill., for appellees Ray Robinson and others.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff filed his complaint in the district court under Sections 4 and 16 of the Clayton Act, 15 U.S.C.A. §§ 15, 26, to recover treble damages for alleged injuries resulting from defendants' alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, and to restrain continuing violations. The complaint was dismissed on the ground that professional boxing is a sport and not subject to the prohibitions of the antitrust laws. We reversed that judgment, on authority of the then recent decision of United States v. International Boxing Club, etc., 348 U.S. 236, 75 S.Ct. 259, and remanded the cause for further proceedings. Peller v. International Boxing Club, Inc., 7 Cir., 219 F.2d 444.

The complaint averred that defendants had conspired to frustrate plaintiff's attempts to promote certain specific professional boxing matches and to prevent him from attaining the professional standing and reputation as a promoter of such championship matches which he would have reached in a competitive market. He alleged in detail that Foundation for Boys, Inc., a charitable corporation, had employed him to promote a middleweight championship match between Ray Robinson and Rocky Graziano in Cincinnati; that plaintiff entered into transatlantic telephonic negotiations with defendant Gainford, Robinson's manager, which resulted in an "oral agreement that Robinson would fight Graziano" in the proposed bout, in consideration of a $70,000 guarantee; that he obtained permission from the Chairman of the Cincinnati Boxing Commission "to proceed with" the promotion; that he had certain conversations with defendant Cohen, Graziano's manager, which resulted in an oral agreement that Graziano would participate, but that Cohen refused to sign a formal contract until and unless Robinson's signature was obtained; that he contracted with Giles, President of the Cincinnati Baseball Club, for the use of Crosley Field as an arena for the contest; that he had completed all arrangements for a trip to Paris, France, for the purpose of obtaining Robinson's signature on the proposed contract, when he, plaintiff, was advised by Gainford that Robinson would not execute the contract; and, finally, that his inability to promote the suggested match resulted from a conspiracy on the part of defendants to control all major professional boxing by use of various devious means, including exclusive contracts with all principal pugilists.

After we remanded the cause, defendants took the depositions of plaintiff and other persons and, without answering the complaint, moved, on the basis of such depositions, for summary judgment on the ground that the evidence showed, without dispute, that plaintiff had not been injured in or sustained any damage to his business or property by reason of the alleged unlawful acts. The motions were allowed, and a summary judgment was entered in favor of all defendants. D.C., 135 F.Supp. 942. This appeal is taken from that judgment.

The question before us, therefore, is whether, on the complaint and depositions, any genuine issue as to any material fact was presented for trial. An examination of the complaint and plaintiff's deposition convinces us that the trial court's determination was correct. Assuming, arguendo, that defendants succeeded in frustrating his plans for the promotion of a Robinson-Graziano bout, it appears conclusively from plain-

tiff's own testimony that such plans never attained the stature of anything more than a hope that a fight might be arranged.

Thus plaintiff testified to converations he had with one Bauer, Secretary of the Foundation, during the course of which Bauer gave him the green light to attempt to promote the match under the auspices of the Foundation. Plaintiff's share of the proceeds, he said, was to be 5% of the gross receipts from admissions, and radio, television and motion picture rights. He testified that Bauer agreed that the Foundation would advance the money for guarantees to the fighters of some $110,000. Although plaintiff's testimony is disputed in this respect, for all purposes of this decision, we accept it as true. Still, it tends to prove nothing more than an informal understanding between plaintiff and Bauer and we find no basis upon which it can be asserted that the Foundation was committed to the venture.

Plaintiff stated, further, that he had transatlantic telephone conversations with Gainford who was in Paris, France, and quoted the latter as saying that Robinson would participate in the contemplated bout. This conversation was confirmed by Gainford's cablegram to plaintiff stating that the guarantee of $70,000 was acceptable, if accompanied by further promise to cover Robinson's expenses incidental to the fight. By return cable, plaintiff offered to furnish expense money in excess of $1,500. The only additional exchange between the two was a telephone conversation in which plaintiff was advised that Robinson would not contract for the proposed match. As to Graziano, plaintiff quoted Cohen as saying that Graziano would participate if plaintiff could get Robinson's signature to a contract. As to the fourth alleged agreement, plaintiff testified that Bauer claimed that he had conversed with Giles by phone and that an agreement had been reached for the use of Crosley Field.

In his remaining pertinent testimony, plaintiff stated that he had never been licensed as a boxing promoter by the Cincinnati Boxing Commission; that he was not so licensed elsewhere; that, at all pertinent times, he was employed as a salesman of storm windows and like wares; that he could not personally advance any sum necessary to the promotion of the proposed bout, and that he knew, prior to any of the negotiations concerning which he testified, that both Robinson and Graziano were under exclusive contracts with the defendant, IBC.

■ This summary of plaintiff's own testimony shows conclusively, we think, that plaintiff had no interest in the subject matter which falls within the protection afforded by the statute. Injury "in his business or property" is a prerequisite to a person's right to maintain an action for treble damages. 15 U.S. C.A. § 15. The facts of this case closely parallel those before the court in Brownlee v. Malco Theatres, Inc., D.C., 99 F. Supp. 312. There plaintiff, employed by defendants as manager of certain theatres, had entered into negotiations with defendant Tenarken for the purchase of Hoyt's Theatre in Fort Smith, Arkansas. The complaint averred that the other defendants had interfered with the negotiations, and that, as a result, the theatre was sold to Malco, on the latter's agreement that it would be closed and thereby removed from competition with other movie houses owned and operated by the defendants. In dismissing the complaint on the ground that it did not disclose any injury to the plaintiff's business or property, the court said at pages 316, 317:

"Giving to the complaint the most favorable construction in favor of the statement of a cause of action it merely reveals that the plaintiff desired to buy the property but did not complete his negotiations for it and that it was sold by one of the defendants to another of the defendants before he succeeded in acquiring any rights in regard to or interest in the property. * * * The complaint discloses that he never acquired any interest in the theatre

and did not have any interest in any theatre, and the failure of his negotiations for the purchase * * * did not injure him in his business or property any more than it may have injured any member of the general public who might have been desirous of buying the property."

Cf. Harrison v. Paramount Pictures, Inc., D.C., 115 F.Supp. 312, affirmed 3 Cir., 211 F.2d 405, certiorari denied 348 U.S. 828, 75 S.Ct. 45; American Banana Co. v. United Fruit Co., 2 Cir., 160 F. 184, 188, affirmed 2 Cir., 166 F. 261, affirmed 213 U.S. 347, 29 S.Ct. 511, 53 L. Ed. 826.

■ In the instant case, plaintiff's testimony reveals that he has never engaged in the fight promotion business; indeed, a part of the injury alleged in his complaint is the frustration of his desire to "attain standing" as a championship professional boxing promoter. His sole venture into the field is the embryonic effort involved herein, which he carried on, apparently, as a sideline to his vocation as a salesman. By his own admission, he has never been licensed in that capacity by any boxing commission. We can conclude, at most, only that he desired to enter the business, but has never been engaged in it.

Plaintiff's testimony reveals further that he has sustained no injury to any property right. The construction most favorable to him which can be placed on his testimony is that he entered into a series of separate negotiations which might have ripened into advantageous agreements under which the proposed fight could have taken place. Assuming the allegations as to defendants' conspiracy and as to its effect on the negotiations to be true, and assuming that, except for the conspiracy, plaintiff's negotiations would have been successful, these assumptions cannot aid plaintiff's cause, it appearing affirmatively that he was not injured within the contemplation of the statutory provisions, inasmuch as no property rights could accrue to him in the premises until and unless he succeeded in obtaining the several contractual relationships for which he was negotiating. Cf. Bigelow v. R. K. O. Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, and cases there cited and discussed.

The trial court correctly ruled that no genuine issue as to any material fact remained in the case. The judgment is

Affirmed.