Robert H. MARTIN, Appellant,

v.

PHILLIPS PETROLEUM COMPANY
et al., Appellees.

No. 22493.

United States Court of Appeals
Fifth Circuit.

July 26, 1966.

A. A. White, Ben H. Schleider, Jr., Earl O. Latimer, II, Houston, Tex., for appellant, Robert H. Martin, Dillingham & Schleider, Houston, Tex., of counsel.

Denman Moody, Houston, Tex., for appellees Chemical Bank New York Trust Company, Texas San Juan Oil Corp., and Tensas Gas Gathering Corp., Baker, Botts, Shepherd & Coates, Houston, Tex., John W. Barnum, Harry H. Voight, Cravath, Swaine & Moore, New York City, of counsel.

Leroy Jeffers, Ross N. Sterling, Lloyd G. Minter, Gen. Atty., Bartlesville, Okl., Richard P. Keeton, Harry M. Reasoner, Houston, Tex., for appellee Phillips Petroleum Co., Vinson, Elkins, Weems & Searls, Houston, Tex., of counsel.

Before BELL and THORNBERRY, Circuit Judges, and FISHER, District Judge.

GRIFFIN B. BELL, Circuit Judge.

This appeal involves a suit for treble damages brought under § 4 of the Clayton Act. 15 U.S.C.A. § 15. The suit is premised on alleged violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2; and §§ 3 and 7 of the Clayton Act, 15 U.S.C.A. §§ 14 and 18. Summary judgment was entered in the District Court for the defendants.[1]

Robert Martin, the plaintiff-appellant, charged that the defendants-appellees combined and conspired to restrain and monopolize interstate commerce in violation of the Sherman Act by taking over and replacing him in the acquisition of a gasoline plant (Locust Ridge) and re-

---

1. The principal defendants are Phillips Petroleum Company and the Chemical Bank New York Trust Company. The other defendants are corporations and individuals who participated in the transaction which forms the subject matter of the suit to the extent described.

lated properties. He also charged that the acquisition of the stock and assets of corporations owning the Locust Ridge properties resulted in a substantial lessening of competition in violation of § 7 of the Clayton Act. The § 3 of the Clayton Act charge is not pursued on this appeal. He asserted that the displacement injured him in his business and property.

We reach only the first issue: Was Martin injured in his business or property within the scope of § 4 of the Clayton Act? Being of the view that he was not, we affirm.

## I.

In the fall of 1960, defendant George H. Jett, a Shreveport oil and gas operator, obtained an option to purchase the Locust Ridge gasoline plant, its gas purchasing and processing contracts, and gathering facilities for $1,800,000. His hope was to find a buyer for the plant.[2]

One prospect for the properties was Martin, an independent oil and gas operator who had been engaged in exploring for, producing, transporting, and marketing oil and gas, and doing first stage processing of gas. While on business in New York in November, 1960, Martin inquired of Bailey, an officer of appellee Bank, whether the Bank would be interested in financing the purchase if Martin could work things out with Jett. At that time Bank controlled defendant Texas San Juan, a corporation engaged in other phases of the oil and gas business. Texas San Juan had a substantial federal income tax loss carry-forward and was indebted to the Bank. Recognizing the possibility of using Texas San Juan as a vehicle for acquiring the Locust Ridge properties, thereby utilizing the tax loss, and perhaps collecting its debt, Bank expressed immediate interest.

Martin then obtained an exclusive suboption from Jett on December 29, 1960. Under its terms Martin was offered the plant and related properties for $2,000,-000, provided that he would expand the plant capacity sufficiently to accommodate Jett's shut-in gas. Jett was also to have an one-eighth net profits interest. The sub-option would expire January 10, 1961. It was later orally extended to January 16, and then to January 25.

Meanwhile, Martin continued his negotiations with the Bank. It was contemplated that the loan would be made to Texas San Juan, and title to the properties would be taken in its name. After payout of the loans, Martin and Texas San Juan would each have a 50% interest in the venture, and Martin would operate the plant. Martin was to provide the Bank with tests and surveys of the plant and its reserves. A condition precedent to any financing was a favorable report by De Laat, also a defendant, as to the sufficiency of the reserves to support the expansion of the plant required under the sub-option. This condition was necessary to meet the terms of the sub-option which required an expansion of the plant from a processing capacity of 25,000 Mcf of gas per day to 40,000 Mcf per day. The Bank demurred to the one-eighth override which Jett was to receive, and told Martin that Jett would have to defer receiving any income until the proposed loans were paid. The De Laat report disclosed insufficient reserves. No subordination agreement was ever obtained from Jett, although he submitted an affidavit in which he stated that he would not have insisted on the expansion if the reserves, as it turned out, would not have warranted the expansion. His purpose was to insure the sale of his shut-in gas.

2. The Locust Ridge gasoline plant is located in Tensas Parish, Louisiana, near the Mississippi River, and processes natural gas gathered by a pipeline system from fields in northeastern Louisiana and northwestern Mississippi. The plant was put in operation in 1958 by its owners, the Feazel-Wheless group, with Tensas Gas Gathering Corporation, a defendant, owning the gas gathering pipeline system and the actual plant operations being conducted by Gas Industries Management Corporation, also a defendant. The plant processed wet gas, sold the natural gas and LPG products extracted therefrom in northeastern Louisiana and northwestern Mississippi and disposed of the dry gas outside the area.

During the week of January 9, 1961, Bailey and Martin had several telephone conferences. The substance of these was that Bailey felt the negotiations were progressing satisfactorily. Bailey indicated to Jett at about this time that the Bank would determine whether it would make the loan on January 16; and if so, the Bank would pay Jett earnest money of $200,000 on that date.

On January 12, 1961, Bailey contacted an officer of Phillips to discuss the Locust Ridge properties. Phillips had a substantial deposit and a cordial business relationship with the Bank. Phillips expressed interest,[3] but insisted that business be done on its terms: that Phillips would operate the plant; receive a 50% interest in the facilities after pay-out of the loans; and receive brokerage fees for the sale of its products. The Bank was seeking an experienced plant operator, gas reserves, and a product market. All three were available in Phillips. The parties agreed to pursue the matter further at a meeting to be held on January 16. Bailey then called Martin to tell him of Phillip's interest and of the January 16 meeting. Martin protested Phillips being brought into the deal, and commenced a search for financing elsewhere the next day. Neither Martin nor his representative were invited or in attendance at the morning meeting which consisted of representatives of Phillips, the Bank, De Laat, and others. At this meeting, materials furnished by Martin to the Bank were made available to Phillips. Martin was brought into the meeting that afternoon and was informed that his original proposal was not acceptable to the Bank. He was offered participation in a revised deal submitted by Phillips, whereby he would have received a three-sixteenths overall interest. Martin rejected this counter-proposal; withdrew his loan application; and proceeded in his efforts to obtain financing elsewhere. Unable to obtain such financing, his sub-option expired unexercised on January 25, 1961.[4]

## II.

In a treble damage suit brought under the federal anti-trust laws, plaintiff must allege and prove that he has been "injured in his business or property" by acts of the defendant proscribed by § 4 of the Clayton Act, 15 U.S.C.A. § 15.[5] Martin admitted that he had never been engaged in either the ownership or operation of a gasoline plant or in marketing the products thereof. He stated that he had engaged in the leasing, exploration, drilling, gas processing, as well as the operation and management of producing oil and gas properties and the sale and marketing of products therefrom. He had also engaged in the gathering and transporting of natural gas. Recognizing this fact, appellees argue that there must be injury to an actual going business; that it is improper to consider the oil and gas business generally as a single business for purposes of the antitrust laws; that the management of producing properties is a business separate and distinct from the operation of a gas plant; hence, since appellant had never engaged in the business of operating a gas plant, he had no business which appellees could injure, but only an expectancy or hope of entering a new business.

---

3. Phillips, having considered building such a plant in 1957, had attempted to acquire an interest in the plant while it was being built. After the plant was built, Phillips sought to purchase its liquids, but the owners refused to sell Phillips an interest in either the plant or its liquids. However, in early 1960, they offered the plant to Phillips for $2,000,000. Phillips concluded that the plant was overpriced and refused the offer. The interest of Phillips in the Locust Ridge properties was due to the plant's strategic location which af-forded Phillips an opportunity to market its products in areas which it could not otherwise economically serve.

4. The sub-option to Martin was not exclusive from January 16 to January 25.

5. "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained * * *."

In support of this position they cite La Rouche v. United Shoe Machinery Corporation, D.Mass., 1958, 166 F.Supp. 633, where the court held that research in shoe manufacturing and machinery was not the same business as the manufacture of shoe machinery, although both were part of the shoe industry. The also rely on the case of Brownlee v. Malco Theatres, Inc., W.D.Ark., 1951, 99 F.Supp. 312, in which the court refused to hold that a former theater manager who was attempting to buy a theater, but who did not own one, was in the motion picture business, even though he had formerly been in the business and had some experience in it. The case turned on the fact that he had only a hope; he did not complete his negotiations for the purchase of the theater and it was sold to another.

On the other hand, Martin maintains that the oil and gas industry is a single business for the purpose of § 4 of the Clayton Act; that he was in business in that industry; that the right to expand was an integral part of his business; and that he was injured in his business when he was prevented from expanding through the purchase of the gasoline plant. His thesis apparently is that the expansion was prevented by the combined activity of Phillips and the Bank; Phillips by taking his place in the proposed purchase, and the Bank by making this possible through its refusal to finance him.

The court will pursue a somewhat different line of reasoning in disposing of these arguments. Martin may establish the requisite injury under § 4 by showing injury to business or property, and we will examine the business aspect first.

■ There are numerous decisions stating that one need not have an actual going business to obtain standing, but an attempt to enter a business is sufficient. Triangle conduit & Cable Co., Inc. v. National Electric Products Corporation, 3 Cir., 1945, 152 F.2d 398; American Banana Co. v. United Fruit Co., 2 Cir., 1908, 166 F. 261; Waldron v. British Petroleum Co., Ltd., S.D.N.Y., 1964, 231 F.Supp. 72; Delaware Valley Marine Supply Company v. American Tobacco Company, E.D.Penn., 1960, 184 F.Supp. 440. However, these decisions lay down two significant requirements. First, there must be the intention to enter the business; and second, there must be a showing of preparedness to enter the business. This is the rule in this circuit. See North Texas Producers Association v. Young, 5 Cir., 1962, 308 F.2d 235, cert. den., 372 U.S. 929, 83 S.Ct. 874, 9 L.Ed. 2d 733, where the court stated the rule, and that the plaintiff there met the business requirement. However, the precise holding is based on a finding of injury to property, a contract, rather than injury to a business.

■■ Here we deal with the contention that a business expansion was envisioned, and we hold that the same rule applies. There must be a showing of intent to expand and of preparedness for the expansion. Mr. Martin manifested the required intent by obtaining the suboption from Jett and entering into negotiations with the Bank. However, there was a complete failure to demonstrate the necessary "preparedness" for acquisition of the Locust Ridge properties. In Waldron v. British Petroleum Co., Ltd., supra, it was stated:

"The legal content of 'business or property,' for the purpose of § 4 of the Clayton Act, is flexible. In the absence of a statutory specification of the attributes of 'business or property,' the courts have spelled out on an ad hoc basis the factual situations that measure up to the required showing of 'business or property' * * *. In determining whether a plaintiff has proved the requisite intention and preparedness, the courts have looked for varying combinations [of several elements] * * *" 231 F.Supp. p. 81.

Some of the elements considered by the courts include the ability of plaintiff to finance the business and to purchase the necessary facilities and equipment, Waldron v. British Petroleum Co., Ltd., supra; the consummation of contracts by the plaintiff, North Texas Producers Association v. Young, supra; affirmative action by plaintiff to enter the business,

Pennsylvania Sugar Refining Co. v. American Sugar Refining Co., 2 Cir., 1908, 166 F. 254; Washington Professional Basketball Corporation, Inc. v. National Basketball Association, S.D.N.Y., 1956, 147 F.Supp. 154; and the background and experience of plaintiff in the prospective business, Peller v. International Boxing Club, Inc., 7 Cir., 1955, 227 F.2d 593, Rossman v. Pullman Co., S.D.N.Y., 1936, 15 F.Supp. 325. Viewing the instant case against these elements, we find that appellant by his own admission had no experience in the operation of a gas plant. He did not have the ability to finance the business, but was hoping to obtain 100% financing from the Bank. He made no investment in facilities or equipment. He had no contract with the Bank, and his sub-option from Jett was a nullity under the Louisiana law. Thus, it seems plain that Martin was unprepared to either enter the new business or to expand his existing business to include the gasoline plant purchase and operation. He was thus not injured in his business within the meaning of § 4.

■ We come next to whether he suffered injury to his property. This means that we must first determine whether there was property to be injured. The words business or property are used in the statute in the disjunctive. And whether appellant has property within the meaning of the statute would appear to depend on whether what he possessed was deserving of legal protection. Waldron v. British Petroleum Co., Ltd., supra. If property is to be found anywhere in the instant case, it must be found either in Mr. Martin's business relationship with the Bank, or in his sub-option with Jett.

■ Under the authorities, Martin's inchoate business relationship with the Bank does not qualify as property. Peller v. International Boxing Club, Inc., supra; Waldron v. British Petroleum Co.,

Ltd., supra; Brownlee v. Malco Theatres, Inc., supra. In Waldron, the court stated that an advantageous business relationship per se is not sufficiently substantial to amount to a business. The loan application to the Bank does not qualify as property. There was no contract between Martin and the Bank, only a loan application in the progress of negotiation, and there was no obligation under the circumstances from which legal rights and duties might flow.

It is true that Martin had a sub-option from Jett, but it was burdened with infirmities. It was conditioned on the ability to expand the plant to a processing capacity of 40 Mcf of gas per day. The reserves made this impossible although Jett indicated, as stated, that he might have waived this condition. Jett had not subordinated his net profits interest to the loan payments.

■ Furthermore, the sub-option expired prior to the first contact between the Bank and Phillips on January 12, 1961. Thus, Martin held only an oral option on immovables after January 10, 1961. Since the properties were located in Louisiana, his sub-option was governed by the Louisiana Statute of Frauds. Article 2440 of the Louisiana Civil Code declares oral contracts of this nature a nullity, not only as to the parties to the contract, but to third persons as well.[6] See Hoth v. Schmidt, 220 La. 249, 56 So. 2d 412 (1951). Only a valid contract would be property subject to the protection of § 4. North Texas Producers Association v. Young, supra.

■ We conclude that no genuine issue of fact existed as to Mr. Martin's standing to sue. He was not injured in his business or property and thus could not make the showing necessary to obtain relief under § 4. The essence of the case is that Mr. Martin was a finder; he sought to promote his find through Bank financing, and was unsuccessful. The

---

6. "All sales of immovable property shall be made by authentic act or under private signature. Except as provided in Article 2275, every verbal sale of immovables shall be null, as well as for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted."

Bank decided not to make the loan. It is true that the Bank, in a sense, gave Mr. Martin's find to Phillips. The remedy for this occurrence if any, is not a suit under the anti-trust laws.

In view of our holding on standing, it is unnecessary to reach the other assignments of error.

Affirmed.