## FORGETT v. SCHARF et al.
### No. 10100.

United States Court of Appeals
Third Circuit.

Argued Feb. 23, 1950.

Decided April 24, 1950.

Charles B. McGroddy, Jr., New York City (Robert L. Hood, Newark, N. J., on the brief), for appellant.

Samuel Milberg, Jersey City, N. J. (Benjamin E. Gordon, Jersey City, N. J., on the brief), for appellees.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit judges.

HASTIE, Circuit Judge.

This appeal from a final order dismissing appellant's complaint on motion requires decision whether that complaint states a cause of action under Section 4 of the Clayton Act [1] for violation of Sections 1 and 2 of the Sherman Act.[2]

The complaint is less than a model of the pleader's art. However, we do not regard it as fatally defective under today's liberal rules. In substance it alleges, and the motion to dismiss admits, the following facts:

Plaintiff is a manufacturer who, beginning in March 1946 and thereafter, has manufactured and sold in interstate commerce machinery for the automatic development and printing of ordinary amateur photographic negatives in continuous strip operation. From March 1946 to November 1947, plaintiff was the only commercial manufacturer of such machinery in the United States. During that period he sold and disposed of fifty-four machines in interstate commerce.

In the spring of 1947, " * * * the defendants Scharf and Hogle formed and entered into a conspiracy to restrain, mo-

1. 38 Stat. 731 (1914), 15 U.S.C.A. § 15.    2. 26 Stat. 209 (1890), 15 U.S.C.A. §§ 1, 2.

nopolize and appropriate to themselves the interstate commerce in automatic strip developing and printing machinery, and to drive plaintiff out of said commerce by performance of the acts hereinafter set out."

The principal acts thereafter alleged as in furtherance of the conspiracy are as follows: In June 1947, defendant Scharf commenced a suit in equity against the plaintiff and obtained *ex parte* an injunction restraining him from the manufacture and sale of his machines. Scharf acted in bad faith, maliciously and without probable cause. Ultimately, the suit resulted in judgment for the present plaintiff. In July, the defendants and others caused the incorporation of a rival business and through that instrumentality engaged in the manufacture and sale of machines similar to those of the plaintiff. Thereafter, the defendants made false and malicious statements to the trade to the effect that they originated the design of plaintiff's machines; that plaintiff misappropriated the design and that purchasers ·of plaintiff's machines might anticipate involvement in litigation.

After consideration of these allegations the trial judge dismissed the complaint, stating that he did so upon the reasoning of the District Court for the District of Massachusetts in Swartz v. Forward Association, 1941, 41 F.Supp. 294, and the District Court for the Eastern District of Pennsylvania in Hunt v. Brotherhood of Transportation Workers, 1942, 47 F.Supp. 571.

Section 4 of the Clayton Act gives "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" an action for treble damages against the offender. 15 U.S.C.A. § 15. It is the theory of the complaint that the defendants entered into a "conspiracy in restraint of trade" forbidden by Section 1 of the Sherman Act and

that they "conspire [d] to monopolize part of the trade or commerce among the several states" as forbidden by Section 2 of the Sherman Act. 15 U.S.C.A. §§ 1 and 2. The question here is whether plaintiff has alleged conduct within the prohibition of Sections 1 and 2 of the Sherman Act.

The above-quoted language of the Sherman Act is brief but comprehensive. Its meaning in relation to a great variety of fact situations has been expounded in a vast body of case law. However, the disposition of this appeal does not require us to range over a large area.

The allegations of the present complaint make it necessary to consider only the situation of a complaining entrepreneur and a rival group who at the time in question are the only parties competitively interested in the manufacturing of a product and its marketing in interstate commerce. In such a situation " * * * though but one competitor can make a sale, all competitors can enjoy the free opportunity of approaching each and every prospective purchaser on equal terms, with the chance of making a sale if he [sic] can persuade him to buy. For one competitor to exclude all or substantially all other competitors from such opportunity—i. e., drive them from the field of freely offering their goods, so as to have that field to himself—is to monopolize according to the legal and accurate sense of the word." [3] It is just such a wrong that the plaintiff alleges.

The Supreme Court has found clear violation of the anti-trust laws where " * * * the aim of [the] combination was the intentional destruction of one type of manufacture and sale which competed with * * * [the conspirators]. The purpose and object of this combination, its potential power, its tendency to monopoly, the coercion it could and did practice upon a rival method of competition, all brought it within the policy of the prohibition declared by the Sherman and Clayton Acts." [4]

3. Patterson v. United States, 6 Cir., 1915, 222 F. 599, 620–621. See also the exposition in United States v. National Retail Lumber Dealers Ass'n, D.C.Colo. 1941, 40 F.Supp. 448, 456–458.

4. See Fashion Originators' Guild of America, Inc. v. Federal Trade Commission, 1941, 312 U.S. 457, 467, 61 S.Ct. 703, 708, 85 L.Ed. 949; accord Eastern States Retail Lumber Dealers' Ass'n

Thus tested, the combination here charged is actionable.

We do not agree with the court below that the rationale of Swartz v. Forward Association, supra, and Hunt v. Brotherhood of Transportation Workers, supra, is decisive against the present complaint. These district court decisions in turn are based upon the decision of the Supreme Court in Apex Hosiery Co. v. Leader.[5] The following excerpts from the opinion in the Apex case state the limiting factors which precluded the application of the antitrust laws there and in the cases relied upon below.

" * * * this Court has never applied the Sherman Act in any case * * * unless the Court was of opinion that there was some form of restraint upon commercial competition in the marketing of goods or services * * *." 310 U.S. at page 495, 60 S.Ct. at page 993.

" * * * this Court has not departed from the conception of the Sherman Act as affording a remedy, public and private, for the public wrongs which flow from restraints of trade in the common law sense of restriction or suppression of commercial competition." 310 U.S. at page 500, 60 S.Ct. at page 996.

"Restraints on competition * * * is [sic] not enough, unless the restraint is shown to have or is intended to have an effect upon prices in the market or otherwise to deprive purchasers or consumers of the advantages which they derive from free competition." 310 U.S. at page 500, 60 S.Ct. at page 996.

" * * * the Sherman Act was directed only at those restraints whose evil consequences are derived from the suppression of competition in the interstate market, so as 'to monopolize the supply, control its price or discriminate between its would-be purchasers.'" 310 U.S. at page 511, 60 S.Ct. at page 1001.

It was the failure of certain acts in the course of labor disputes to reveal design or produce consequences within the limitations of the foregoing quotations which made the Sherman Act inapplicable in the Apex case and in the cases which follow it.

[1] But the present complaint plainly states a design to suppress competition and to monopolize supply within the Apex conception of combination in restraint of trade. The complaint pictures a situation in the early stages of the development and exploitation of a new device for the improvement of the processing of amateur photographic films. A court may properly take judicial notice that the commercial processing of amateur photographs is a substantial and nationwide industry. Complainant says that he was the first in the field as a manufacturer of the new device and that he was marketing it in interstate commerce. The development of competition with its attendant public advantages would normally follow. At this point, however, according to the complaint, persons contemplating entry into this specific new business conspired to eliminate the only pre-existing enterprise in the field through sundry wrongful and damaging acts, and to appropriate the business to themselves exclusively. The Sherman Act forbids this.[6] There is no contrary sugges-

v. United States, 1914, 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490, L.R.A.1915A, 788; Pennsylvania Sugar Refining Co. v. American Sugar Refining Co. et al., 2 Cir., 1908, 166 F. 254; White Bear Theatre Corp. v. State Theatre Corp., et al., 8 Cir., 1942, 129 F.2d 600; Peto v. Howell, 7 Cir., 1938, 101 F.2d 353; cf. American Tobacco Co. v. U. S., 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575.

5. 1940, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044.

6. See footnote 4 supra. Apposite also

and not impaired by subsequent adjudication is that part of the familiar opinion in Standard Oil Co. of New Jersey v. United States, 1910, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734, which expounds the interrelation of Sections 1 and 2 of the Sherman Act in the proscription of conduct directed toward monopolistic control of any part of interstate commerce:

"* * * the context manifests that the statute was drawn in the light of the existing practical conception of the law of restraint of trade, because it groups

tion in the doctrine of the Apex case.

 It is not material that the business here involved, admittedly interstate commerce, was not yet extensive.[7] It was new. Its capacity for competitive expansion and the extent of the public benefit to be derived therefrom do not appear and would hardly have been determined at the time of the acts of which plaintiff complains. In any event, this very potential of beneficial development through free competition is a fundamental characteristic of our economy protected by the anti-trust laws. Those laws must be as greatly concerned that commerce grow in its infancy through the emergence of competition as that it not be stifled in its maturity by the elimination of competition. Indeed, in a long view, the throttling of one small operator pioneering in a new field may cause more serious damage to the public interest than a quantitatively greater restraint in a field where business already is largely and widely developed.

 What has been said is sufficient to dispose of the only objections to the complaint urged before us or stated in the opinion below. We think those objections are not well taken and that the complaint should be reinstated.

The record shows that the defendant moved not only to dismiss the complaint but alternatively to strike certain portions thereof or to have a more definite statement of material allegations. The court below took no action with respect to these alternative requests and therefore we express no opinion upon their merits.

The judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.

as within that class, not only contracts which were in restraint of trade in the subjective sense, but all contracts or acts which theoretically were attempts to monopolize, yet which in practice had come to be considered as in restraint of trade in a broad sense. * * *"
"And a consideration of the text of the second section serves to establish that it was intended to supplement the first, and to make sure that by no possible guise could the public policy embodied in the first section be frustrated or evaded. * * *"
"Undoubtedly, the words 'to monopolize' and 'monopolize' as used in the section, reach every act bringing about the prohibited results. * * *"
"In other words, having by the first section forbidden all means of monopolizing trade, that is, unduly restraining it by means of every contract, combination, etc., the second section seeks, if possible, to make the prohibitions of the act all the more complete and perfect by embracing all attempts to reach the end prohibited by the first section, that is, restraints of trade, by any attempt to monopolize, or monopolization thereof, even although the acts by which such results are attempted to be brought about or are brought about be not embraced within the general enumeration of the first section. * * *" 221 U. S. at pages 59, 60, 61, 31 S.Ct. at page 515.

7. "It is the act of monopoly over a product in any part of interstate commerce that is forbidden. * * * 'Any part' of commerce may cover commerce in a vast district, or that in a small district, that occurring over a long period of time or over a short period * * *". Peto v. Howell, 7 Cir., 1938, 101 F.2d 353, 356; cf. Steers v. United States, 6 Cir., 1911, 192 F. 1.