319 N.E.2d 159 (1974)
Glen Dale GENTRY and Mary Gentry, d/b/a Gentry Industrial Service, Appellant (Plaintiff below),
v.
UNITED SLATE, TILE and Construction Roofers, Damp and Waterproof Workers Association, Anderson Local #250 and James Harles, Business Manager, Anderson, Indiana, and James Harles, Appellees (Defendants below), and Archie R. Hunnicutt and William R. Hunnicutt, D/B/a Ralph Hunnicutt & Sons, Defendant below.
No. 1-174A12.
Court of Appeals of Indiana, First District.
November 25, 1974.
*160 Douglas Norris, Cambridge City, for appellant.
Edward J. Fillenwarth, Indianapolis, for appellees.
LYBROOK, Judge.
Plaintiff-appellant Gentry Industrial Services (Gentry) appeals from the granting of the motion to dismiss of defendant-appellees United Slate, Tile and Construction Roofers, Damp and Waterproof Workers Association, Anderson Local #250 (United) and James Harles. The single issue for our review is whether the trial court erred in sustaining appellees' motion.
The record reveals that defendant Ralph Hunnicutt & Sons (Hunnicutt) was the general contractor of a project for the construction of an addition to the Chrysler Corporation Forge Division Plant at New Castle. Gentry, a partnership whose primary business consisted of the application of built-up roof surfaces to large or commercial buildings, was awarded a subcontract by Hunnicutt to apply the roofing to the Chrysler plant addition. A problem arose, however, when it was discovered *161 that Gentry employed non-union workers. Harles, business manager for United, the representative union in Henry County, informed Hunnicutt that if the roofing subcontract work was awarded to and performed by Gentry, the union would picket the Chrysler plant. As a result, Hunnicutt cancelled Gentry's subcontract, and Gentry was not allowed to perform the work.
Seeking redress, Gentry initiated two proceedings by filing (1) an unfair labor practice charge against United in the 25th Regional Office of the National Labor Relations Board at Indianapolis and (2) a complaint against Hunnicutt for specific performance and injunctive relief in the Henry Circuit Court. The record does not reveal what action, if any, was taken by the NLRB with respect to Gentry's charge.
Gentry's complaint against Hunnicutt was later amended to add United and Harles as defendants. The amended complaint was framed in two legal paragraphs, the first seeking damages from Hunnicutt and the second from United and Harles. The theory of Gentry's claim for damages against Harles and United was that the threat to picket made by Harles to Hunnicutt induced Hunnicutt to cease doing business with Gentry thereby constituting an unfair labor practice under § 8(b)(4) of the National Labor Relations Act, as amended,[1] and entitling Gentry to recover damages pursuant to § 303 of the National Labor Management Relations Act of 1947, as amended.[2]
§ 8(b)(4), supra, provides:
"It shall be an unfair labor practice for a labor organization or its agents ... (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is 
(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section;
(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;"
§ 303, supra, provides:
(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 258(b)(4) of this title.
(b) Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."
*162 Harles and United filed a joint answer to Gentry's amended complaint wherein they sought dismissal of the action against them on two grounds: (1) failure of Gentry to state a claim upon which relief can be granted and (2) lack of subject matter jurisdiction. After hearing arguments, the trial court sustained appellees' motion to dismiss. Sixty days later the trial court entered judgment dismissing the action as to the appellees and Gentry filed his motion to correct errors.
Since the trial court's order of dismissal does not reveal which of the two grounds advanced by appellees was the basis of the dismissal, we shall address both.
Appellees maintain on appeal, as they did below, that Gentry's amended complaint was unable to withstand a motion to dismiss based upon Ind. Rules of Procedure, Trial Rule 12(B)(6) for two reasons: (1) it did not contain an allegation that the parties concerned were engaged in an industry or activity affecting commerce, and (2) it did not specifically identify the sections of the United States Code under which Gentry was proceeding. For reasons stated, we do not find either argument persuasive.
Under the language of § 303, supra, it is clear that to be successful, Gentry must show that its claim involves "an industry or activity affecting commerce." However, contrary to appellees' contention, it is not necessary that Gentry's complaint contain a specific allegation to that effect to be sufficient to withstand appellees' TR. 12(B)(6) motion.
The guidelines for dismissing a complaint on a TR. 12(B)(6) motion were announced by our Supreme Court in State v. Rankin (1973), Ind., 294 N.E.2d 604:
"This Court has noted that in a typical 12(B)(6) situation, a complaint is not subject to dismissal unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. Sacks v. American Fletcher National Bank and Trust Co. (1972), Ind., 279 N.E.2d 807. See also Gladis v. Melloh (1971), Ind. App., 273 N.E.2d 767; Wyant v. Lobdell (1972), Ind. App., 277 N.E.2d 595. The rules do not require that the complaint state all the elements of a cause of action. It must be remembered that our new rules are based on so-called notice pleadings in which a plaintiff essentially need only plead the operative facts involved in the litigation. Other means less drastic than dismissal of the action can be used to clarify the theory and basis for the cause of action. Among these are a Motion for a more definite statement under TR. 12(E), our very broad discovery rules, and the pretrial conference under TR. 16(A)(1). We might note that certain cases from the Court of Appeals apparently state that the plaintiff is required to state in his complaint the theory upon which his claim is based. See, for instance, Cheathem v. City of Evansville (1972), Ind. App., 278 N.E.2d 602. Although a statement of the theory may be highly desirable, it is not required. When no evidence has been heard or no affidavits have been submitted, a 12(B)(6) motion should be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted." (Original emphasis.)
Thus, it would be proper to sustain appellees' motion to dismiss on the grounds of failure to comply with the commerce requirement of § 303 only if it is clear from the face of Gentry's amended complaint that under no circumstances could it be shown that the parties were engaged in an industry or activity affecting commerce.
An examination of Gentry's amended complaint reveals that, as appellees argue, it does not contain a specific allegation of commerce. It does however, allege inter alia (1) that Gentry entered a valid subcontract with Hunnicutt for the application of built-up roofing to the addition to the Chrysler Corp. plant in New Castle; *163 (2) that Gentry employs non-union workers; (3) that Chrysler is a union shop whose union is an affiliate of United Auto Workers; (4) that under the terms of its subcontract Gentry was required to pay the union wage scale prevalent in the area at the time of the contract; (5) that upon learning of Gentry's subcontract, Harles, in his representative capacity as business manager for United, approached Hunnicutt and announced that the union would picket the Chrysler plant if Gentry performed the work; (6) that because of Harles' threat to picket, Hunnicutt terminated Gentry's subcontract; and (7) that due to the loss of the contract, Gentry was damaged to the extent of $10,000.
Since it is evident that the parties involved are engaged in the construction industry we are unable to say as a matter of law that it is clear from the face of the complaint that under no circumstances could Gentry show that the parties are engaged in an industry or activity affecting commerce. It therefore would be reversible error to sustain appellees' motion to dismiss on the grounds of Gentry's alleged failure to comply with the commerce requirements of § 303, supra.
To require Gentry to specifically set forth in its complaint the sections of the United States Code under which it was proceeding would be tantamount to requiring a statement in the complaint of the theory upon which the claim for damages was based. As seen above, under our liberalized rules of notice pleading, while such a statement is highly desirable, it is not required to avoid dismissal via a TR. 12(B)(6) motion. State v. Rankin, supra.
Having resolved both reasons advanced by appellees in support of the proposition that Gentry's complaint was unable to withstand a TR. 12(B)(6) motion to dismiss, we reach the question of subject matter jurisdiction.
Quoting extensively from San Diego Building Trade Council v. Garmon (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, appellees argue that the trial court lacked subject matter jurisdiction over the issues in dispute. The Garmon court reviewed a decision by the California Supreme Court which affirmed a lower court ruling in a labor law dispute. The California Supreme Court declared that since the NLRB had declined to exercise its jurisdiction over the dispute, the California courts had power to decide the case. After deciding that the union conduct constituted an unfair labor practice under § 8(b)(2) of the National Labor Relations Act as amended, the California courts awarded monetary damages to those aggrieved. On certiorari, the Garmon court declared that despite the NLRB's refusal to entertain the unfair labor practice charge, the California courts were without subject matter jurisdiction to regulate activities that are arguably protected by § 7 of the NLRA or arguably prohibited by § 8:
"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [Taft-Hartley] Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.
"At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. *164 But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board. See e.g., Garner v. Teamsters, etc. Union, 346 U.S. 485 (1953) especially at pages 489-491, 74 S.Ct. 161, at pages 165-166, 98 L.Ed. 228; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955).
"The case before us is such a case. The adjudication in California has throughout been based on the assumption that the behavior of the petitioning unions constituted an unfair labor practice. This conclusion was derived by the California courts from the facts as well as from their view of the Act. It is not for us to decide whether the National Labor Relations Board would have, or should have, decided these questions in the same manner. When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.
"To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States... . In the absence of the Board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction... . The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy." (Footnotes omitted.)
While the above language of Garmon seems persuasive on the question of whether the trial court lacked subject matter jurisdiction over conduct that arguably violates § 8(b)(4) of the NLRA, it does not preempt an action brought for damages under § 303, supra. Under § 303 a union may be sued for damages for engaging in activity defined as an unfair labor practice under § 8(b)(4) regardless of whether an unfair labor practice charge has been filed with the Board. See e.g. International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp. (1952), 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275; Old Dutch Farms, Inc. v. Milk Drivers and Dairy Employees Union (2d Cir.1966), 359 F.2d 598, cert. denied, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67; Hyatt Chalet Motels, Inc. v. Salem Building & Construction Trades Council (1968), D.C.Or., 298 F. Supp. 699. Further, a successful action for damages under § 303 may be maintained despite a finding by the NLRB that the union conduct complained of did not violate § 8(b)(4).[3] The justification for the anomaly *165 allowing conflicting conclusions on the same factual setting is that both a public wrong and a private wrong exist. By conducting administrative proceedings to enforce the National Labor Relations Act and its amendments, the NLRB safeguards the public interest, while a § 303 suit enforces the private right even though that right arises under the same statute. Moreover, a congressional intent to allow such concurrent and independent actions is reflected in the language of the act itself.
Thus, the preemption doctrine of Garmon, supra, does not affect an aggrieved parties' right to maintain an action for damages pursuant to § 303. Old Dutch Farms, Inc. v. Milk Drivers and Dairy Employees Union, supra. It therefore was not incumbent upon Gentry to await a final NLRB order stating that § 8(b)(4) was violated before filing its damage action. Further, under § 303 the Henry Circuit Court was an appropriate forum for the adjudication of Gentry's claim. It therefore cannot be said that the trial court lacked subject matter jurisdiction.
Since there is no sufficient basis to warrant dismissal of Gentry's complaint on appellees' TR. 12(B)(6) motion and since the trial court does not lack subject matter jurisdiction, it was reversible error to dismiss Gentry's complaint.
Finally, we feel compelled to address appellees' argument concerning Gentry's motion to correct errors. Appellees maintain that Gentry's motion did not comply with the guidelines of TR. 59(G) and Rule AP. 4(A). We do not agree. Although, as appellees point out, Gentry's motion does not expressly refer to the trial court's final judgment, the record clearly reveals that it was filed subsequent to entry of the final judgment. Further the motion specifically delineates the grounds asserted as error. In our opinion, it is sufficient under the rules and Gentry's appeal is properly before this court.
The judgment of the trial court is therefore reversed and the cause remanded to the trial court with instructions to overrule appellees' motion to dismiss.
ROBERTSON, P.J., and LOWDERMILK, J., concur.
NOTES
[1] 29 U.S.C. § 158(b)(4).
[2] 29 U.S.C. § 187.
[3] In United Brick & Clay Workers v. Deena Artware, Inc. (6th Cir.1952), 198 F.2d 637, cert. denied, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694; and NLRB v. Deena Artware, Inc. (6th Cir.1952), 198 F.2d 645, cert. denied, 345 U.S. 906, 73 S.Ct. 644, 97 L.Ed. 1342; the Court of Appeals upheld two verdicts: (1) a decision by the NLRB that the union conduct did not violate § 8(b)(4) and (2) a judicial decision awarding damages under § 303 for the same conduct.