CITIZENS NATIONAL BANK OF GRANT COUNTY, A NATIONAL BANKING ASSOCIATION, FORMERLY THE VAN BUREN BANK, A STATE BANKING ASSOCIATION *v.* FIRST NATIONAL BANK IN MARION, A NATIONAL BANKING ASSOCIATION, AND MARION NATIONAL BANK OF MARION, A NATIONAL BANKING ASSOCIATION, AND ROBERT R. BATTON, JR., GLENN BOXELL, WILLIAM C. CRIMMINS, ROBERT F. CURRAN, JAMES R. DAVIS, JOHN R. FEIGHNER, JOHN M. FOSTER, SAMUEL P. GOOD, MURRAY HOLLIDAY, FLOYD W. IRVING, GEORGE M. KLEDER, JOHN MOONEY, GEORGE E. ROGERS, DAVID L. KILEY, SAMUEL R. McCLAIN, JOHN L. BELL, JR., ROBERT R. BOARD, RICHARD H. ERLEWINE, F. X. GARTLAND, JR., LEONARD GILLON, LANDESS HARRIS, ALVIN H. HERRICK, WILLIAM H. OLDS, JOSEPH A. OSBORN, J. P. ROGERS, M. H. TAYLOR, THOMAS G. WILSON AND AN-

THONY M. ROSKIN, INDIVIDUALLY AND AS MEMBERS OF THEIR
RESPECTIVE BOARDS.

[No. 2-773A172.  Filed July 23, 1975.]

118

*Wasson J. Wilson, Fred G. Donnersberger, Wilson, Benne, Feingold & Donnersberger,* of Hammond, *J. A. Bruggeman, Robert S. Walters, Barrett, Barrett & McNagny,* of Fort

Wayne, *Frank J. Biddinger, Biddinger & Johnson,* of Marion, *Ned R. Carnall,* of Bluffton, for appellant.

*George P. Osborn, Kim A. Rogers, Kiley Osborn, Kiley & Harker,* of Marion, *Harry T. Ice, James E. Hawes, Jr., Ice Miller Donadio & Ryan,* of Indianapolis, *Edris, Edris and Dale,* of Bluffton, *Gallivan & Hamilton,* of Bluffton, *Thomas L. Morin,* of Marion, *McHale, Cook and Welch,* of Indianapolis, for appellees.

SULLIVAN, P.J.—Citizens National Bank appeals from dismissal of its complaint pursuant to Ind. Rules of Procedure, Trial Rule 12(B)(6).

Because the complaint herein was dismissed prior to any discovery or reception of evidence, the record before us is somewhat scant. However, for background purposes, the following facts, discernible from prior federal litigation,[1] are worthy of note.

Citizens National Bank (Citizens) was formerly the Van Buren Bank, a state bank located in Van Buren in Grant County, Indiana. First National Bank and Marion National Bank (Defendants) are national banks located in Marion in Grant County.

Prior to 1966, the directors of Citizens had attempted to establish a bank in Marion in competition with Defendants. These attempts were unsuccessful.

On July 19, 1966, Citizens filed applications with the United States Comptroller of the Currency seeking to convert the Van Buren Bank from a state to a national bank, to transfer its main office to Marion, and to retain the Van Buren office as a branch office.

The Comptroller solicited the opinions of the Defendants as to the applications. Both voiced their objection to the opening

---

1. None of the parties question the propriety of the method by which the federal cases were brought before the trial court; i.e., in appellees' briefs, and supplemental briefs, in support of their respective motions to dismiss. Further, we do not deem these references to prior federal litigation sufficient to transform the motions to dismiss into motions for summary judgment. See 3 Harvey, *Indiana Practice* § 56.5, p. 556 (1970).

of the new "branch" in Marion. Notwithstanding these objections, the Comptroller granted preliminary approval of the applications.[2] Defendants then instituted an action in the Federal District Court for the Northern District of Indiana, seeking to enjoin the granting of the necessary authority. The issues in that case revolved around then existing Ind. Ann. Stat. § 18-1707 (Burns 1964)[3] which by virtue of population classification, as to the City of Marion, barred any state bank from establishing a branch in any city or town already served by an existing bank. Concomitantly, Federal law did then and does now provide that national banks may open branch offices only in locations where state law would permit a state bank to do so.[4]

The Federal District Court determined that Citizens' denomination of its proposed new facility as a "Main Office" did not change the essential characteristics of the applications and that the purpose of the transaction was to open a branch in Marion. The court enjoined the Comptroller from granting the applications. *Marion National Bank of Marion* v. *Saxon* (N.D. Ind. 1966), 261 F.Supp..373.

The District Court's decision was modified on appeal by the Seventh Circuit Court of Appeals. *Marion National Bank of Marion* v. *Van Buren Bank* (7th Cir. 1969), 418 F.2d 121. Both parties now assert that the appellate decision was a vindication of their respective positions. We need not concern ourselves with this dialectic. Suffice it to say that under the modified injunction, Citizens was eventually granted the authorization they desired, and on or about March 2, 1970, Citizens opened a national bank office in Marion.

On February 18, 1971, Citizens instituted the present action in Grant County Superior Court against the defendant banks

2. 12 C.F.R. § 4.2(c) (1975) authorizes such preliminary approval, but gives no hint as to the effect of such an approval in cases such as that before us.

3. This section now exists as Ind. Ann. Stat. § 28-1-17-1 (Burns Code Ed. 1973).

4. 12 U.S.C.A. § 36(c) (1975 Supp.).

and their directors. The complaint is central to the issues on appeal. We therefore quote it in its entirety:

"Plaintiff alleges:

1. That the Plaintiff is now a national banking association, having been given authority by the Comptroller of the Currency of the United States to convert from an Indiana state chartered bank to a national banking association, and having been given authority by the Comptroller of the Currency of the United States to change its name from 'The Van Buren Bank' to 'Citizens National Bank of Grant County'.

2. That on or about the 7th day of October, 1966, pursuant to adjudicatory procedures, the Comptroller of the Currency of the United States granted to and approved plaintiff's applications to convert the Van Buren Bank from a state banking association into a national banking association; to change the name of the bank from 'The Van Buren Bank' to 'Citizens National Bank of Granty County'; to relocate its main office from the town of Van Buren to an on the square location in Marion, Indiana; and to retain the former office in the town of Van Buren as a branch bank.

3. That on or about the 19th day of October, 1966, the defendants, themselves and through their respective boards of directors, pursuant to agreement, following a continuing course of conduct, and pursuant to a scheme, design, understanding, contract, combination and conspiracy to restrain trade and commerce in the banking business in Marion, Indiana and its environs, brought an action in the United States District Court for the Northern District of Indiana, Fort Wayne Division (Cause No. 1822), seeking to enjoin and prevent plaintiff from lawfully entering the banking business in the City of Marion and its environs.

4. Defendants instituted and maintained said action in the United States District Court with the intent and design, and by concerted action to monopolize or attempt to monopolize, or to maintain and perpetuate an existing monopoly position, in the banking business within the City of Marion and its environs.

5. Prior to the commencement of their U.S. District Court proceedings, defendants, acting in concert and with the purposes and intent set forth in paragraphs 3 and 4 of this complaint, intervened in the adjudicatory proceedings before the Comptroller of the Currency of the United States and sought to cause him to deny plaintiff the administrative authority to remove its banking business to Marion,

Indiana, all in furtherance of defendants' scheme, design, undertaking, contracting, combination and conspiracy to restrain trade or commence and to maintain and perpetuate a monopoly in the banking business in the City of Marion and its environs.

6. Defendants acted in concert and with the purposes and intent set forth in paragraphs 3 and 4 of this complaint, to do other acts and things in furtherance of their object of preventing plaintiff or any other person or company from entering into the banking business in the City of Marion and its environs.

7. On the 24th day of Feb., 1970, the Comptroller of the Currency of the United States granted authority to The Van Buren Bank to commence business as a national banking association under the title 'Citizens National Bank of Grant County', effective as of the commencement of business on March 2, 1970, to be located in Marion, State of Indiana.

8. Subsequently thereto the Comptroller of the Currency granted approval to the Citizens National Bank of Grant County to establish and maintain a branch bank in Van Buren, Indiana, at the old offices of the Van Buren Bank in Van Buren.

9. That by virtue of the scheme and design and concerted action of these named defendants, plaintiff, Citizens National Bank of Grant County was denied the right and franchise to lawfully conduct the business of banking in Marion, Indiana, from the 19th day of October, 1966, up to and including the 2nd day of March, 1970, and that this plaintiff was therefore and thereby as a proximate result of the attempt to monopolize and restrain the banking business in the City of Marion by these defendants, damaged and injured in its business and property to the extent that it lost profits that would normally have been derived from the normal conduct of banking business in Marion, for a period of approximately three and one-half years.

10. Plaintiff has been damaged by loss of profits accasioned by the scheme of interference, monopoly and restraint of trade by these named defendants, which normal profits and growth during this period of time would normally be anticipated to amount to a minimum of Two Hundred Seventy-two Thousand Six Hundred Twenty-five ($272,625.-00) Dollars per year, and that therefore this plaintiff, for a period of three and one-half years has been damaged to the extent of Eight Hundred Fifty-two Thousand ($852,-000.00) Dollars.

11. That this plaintiff, by virtue of the scheme and design and maintenance of the litigation by these named

defendants, was required to obtain the services of counsel to defend it and therefore and thereby was forced to incur the expense of counsel as well as all attendant expenses of litigation and therefore sustained additional money damages.

12. That this action is brought as a private action for damages pursuant to Burns' Indiana § 23-122 and plaintiff is therefore and thereby entitled to treble damages for the injury to its business and property by reason of the conduct of defendants, and each of them, and plaintiff is therefore entitled to treble damages together with costs of suit in addition to attorneys fees for the bringing of this action. WHEREFORE, plaintiff demands judgment of the defendants and each of them, in the sum of Two Million Eight Hundred Fifty Thousand ($2,850,000.00) Dollars; its costs herein expended; reasonable attorneys fees for bringing this action; and prays that the court grant any and all other proper relief."

On March 8, 1971, Defendants filed a petition for removal of the case to the Federal District Court, Northern District of Indiana. Following assumption of jurisdiction by the Federal Court, Citizens promptly filed a motion to remand the cause to the state court. On May 25, 1971, Defendants filed separate motions to dismiss for failure of the complaint to state a claim upon which relief could be granted. The Federal District Court, however, prior to any ruling on the motions to dismiss, remanded the cause to the Grant Superior Court. In the state court, Defendant-First National filed a supplemental brief in support of its motion to dismiss; and Citizens filed a motion for default judgment asserting that the motion to dismiss was not before the state court and that therefore no timely responsive pleading had been filed. Venue was then changed to the Wells Circuit Court. On October 20, 1972, Citizens' motion for default was overruled, and, on February 27, 1973, the Wells Circuit Court granted both Defendants' motions to dismiss.

In granting Defendant Marion National Bank's motion to dismiss, the trial court reasoned that the doctrine of res judicata estopped Citizens from maintaining the action. Additionally, the court granted Defendant First National Bank's motion to dismiss for the following reasons:

1. Citizens did not sustain an injury to any legal right.
2. Citizens failed to allege any public injury or unreasonable restraint of trade.
3. Citizens' action is a collateral attack upon a prior judgment and is therefore not recognized under Indiana law.
4. Citizens' only right to recover is by action upon the injunction bond.
5. Citizens may not penalize the Defendants for the exercise of constitutionally protected acts.
6. The doctrines of res judicata and collateral estoppel bar the relitigation of issues which have been previously determined against Citizens.
7. Citizens' claim was a compulsory counter-claim in the prior federal litigation, and it cannot be belatedly asserted in this later action.
8. Citizens' claim are barred by the applicable statute of limitations.

Citizens' appeal presents three issues for our consideration:

1. Were the Defendants' motions to dismiss properly before the trial court?
2. Did the trial court err in overruling Citizens' motion for default judgment?
3. Did the trial court err in granting Defendants' motions to dismiss?

In light of our holding which reverses the trial court's judgment and remands for further consideration of the merits, we have attempted to be complete and exhaustive in our discussion of the issues. By this discussion, we do not intend to indicate views on matters not before us, but, rather, intend that the trial court and counsel may be advised with reference to their consideration and handling of the merits upon remand.

I

MOTIONS TO DISMISS FILED IN FEDERAL COURT
WERE PROPERLY RULED ON BY STATE COURT
FOLLOWING REMAND, AND DEFENDANTS
WERE NOT THEREFORE IN DEFAULT

Pursuant to 28 U.S.C.A. § 1446, on March 8, 1971 Defendants filed their Petition for Removal and their bond in the

federal court. On the same date, Defendants filed Notice of Petition for Removal in Grant Superior Court. The removal thereby became wholly effective and the Grant Superior Court lost jurisdiction. 28 U.S.C.A. § 1446(e) ; *Fossey* v. *State* (1970), 254 Ind. 173, 258 N.E.2d 616; *State ex rel. Allis-Chalmers Mfg. Co.* v. *Boone Circuit Court* (1949), 227 Ind. 327, 86 N.E.2d 74; *but see State ex rel. Lyons* v. *Lake Superior Court, Room No. 3* (1972), 259 Ind. 217, 285 N.E. 2d 642.

With reference to the overall purpose and application of the Federal Removal Statute, the Seventh Circuit Court of Appeals in *Riehl* v. *National Mutual Insurance Co.* (1967), 374 F.2d 739 held that minor irregularities in transfer of cases between state and federal courts (and impliedly in transfer of cases from federal to state courts on remand) may be inconsequential. To reason otherwise, said the Federal Appeals Court "would be to elevate form over substance." *Riehl, supra,* 374 F.2d at 742. The irregularity in *Riehl* involved failure of the removing defendant to attach to the removal petition a copy of the complaint in the state court. We believe the irregularity in the case before us, if it be an irregularity at all, in failing to refile the Motions to Dismiss in the state court following remand from the federal court is likewise inconsequential.

We therefore hold that when filed, the Motions to Dismiss were properly before the Federal District Court but that when the federal court ordered remand without having ruled upon such motions, they were properly ruled on by the state court without "refiling" in the state court. *Viles* v. *Sharp* (W.D. Mo. 1965), 248 F.Supp. 271. *See Ayres* v. *Wiswall* (1884), 112 U.S. 187, 5 S.Ct. 90; *Ransom* v. *Sipple Truck Lines, Inc.* (N.D. Iowa 1943), 52 F.Supp. 521; *Olds* v. *Brown Shoe Co.* (W.D. Mo. 1938), 25 F.Supp. 880. (Cases decided under predecessor statute to 28 U.S.C.A. § 1446 *et seq.*).

## II.
## EVEN ASSUMING TECHNICAL DEFAULT BY DEFENDANTS IN STATE COURT, ENTRY OF JUDGMENT NOT REQUIRED AS A MATTER OF LAW

Even were we to consider it essential to the viability of the Motions to Dismiss in the state court that such motions be refiled in the state court, such failure to refile did not entitle Citizens to a default judgment as a matter of law. Our research has disclosed no decision which *requires* entry of judgment against a defendant in technical default. Present Rule 55 does not so require. We must therefore conclude that under the law in effect prior to TR. 55 (Burns 2-1102 [1967 Repl.]), there was no such mandatory duty on the part of the trial court. This conclusion is reached notwithstanding the seeming mandatory language of the prior law:

> "If, from any cause, either party shall fail to plead or make up the issues within the time prescribed, the court shall forthwith enter judgment as upon default, unless for good cause shown, further time be given for pleading, on the payment of the costs occasioned by the delay." Ind. Ann. Stat. § 2-1102 (Burns 1967 Repl.).

The granting of a judgment upon default under prior law, as now, rested within the sound discretion of the trial court. *Custer* v. *Mayfield* (1965), 138 Ind. App. 575, 205 N.E.2d 836; Wright & Miller, *Federal Practice & Procedure* § 2685 (1973).

## III
## MOTIONS TO DISMISS WERE IMPROPERLY SUSTAINED
## (A)  COMPLAINT IS NOT VULNERABLE ON GROUNDS THAT IT FAILED TO SHOW AN INJURY TO A LEGAL RIGHT

Citizens contends that the trial court committed error in ruling that Citizens sustained no injury to any legal right and therefore lacked standing to maintain the action.

Defendants argue that until Citizens opened its Marion office, it had no "business or property" which could be injured. They further contend that Citizens was prevented from opening the bank in Marion only by the denial of the comptroller's authorization. Until thus authorized, they reason, Citizens had no "right" to do business in Marion, and thus has no standing to complain of any allegedly anticompetitive acts committed prior to the Comptroller's authorization.

Defendants have assumed that the only anti-competitive acts alleged were those involved in opposing the application to the Comptroller. As will be hereinafter discussed in Part III (C), the complaint does not so limit the facts.

However, even if the acts of Defendants in opposing the Comptroller's authorization were the only possible basis for relief claimed in the complaint, it is not necessarily true that Citizens lacked standing to bring this action.

This suit was commenced by Citizens pursuant to the Indiana Anti-Trust Act; specifically the following provisions:

Ind. Ann. Stat. § 24-1-2-1 (Burns Code Ed. 1973) :

"Combinations to restrain trade or prevent competition—Act of 1907.—Every scheme, design, understanding, contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce, or to create or carry out restrictions in trade or commerce, or to deny or refuse to any person or persons full participation, on equal terms with others, in any telegraphic service transmitting matter prepared or intended for public use, or to limit or reduce the production, or increase or reduce the price of merchandise or any commodity, natural, or artificial, or to prevent competition in manufacturing, within or without this state, is hereby declared to be illegal, but none of the provisions of this act [24-1-2-1—24-1-2-12] shall be construed to apply to [or] repeal, modify or limit, or make unlawful any of the powers, rights or privileges now existing or conferred by law upon any person, co-partnership, association or corporation. Every person who shall make any such contract or engage in any such combination or conspiracy or enter into any such scheme, design or understanding, or do within this state any act in furtherance of any such contract, combination, conspiracy, scheme,

design or understanding, entered into without this state, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding five thousand dollars [$5000], to which may be added imprisonment in the county jail or workhouse for a term not exceeding one [1] year in the discretion of the court or jury trying the cause: Provided, however, That it shall be a good defense to any action growing out of any violation of the provisions of this act or any other act or common law relating to the subject-matter of this act if the defendant shall plead and by a fair preponderance of the evidence prove that such violation is not in restraint of trade or commerce or does not restrict trade or commerce or limit or reduce the production or increase or reduce the price of merchandise or any commodity natural or artificial or prevent competition in manufacturing."[6]

and, more importantly,

Ind. Ann. Stat. § 24-1-2-7 (Burns Code Ed. 1973) :

"Private action — Damages — Penalty. — Any person who shall be injured in his business or property by any person or corporation by reason of the doing by any person or persons of anything forbidden or declared to be unlawful by this act [24-1-2-1—24-1-2-12], may sue therefor in the circuit or superior court of any county in which the defendant or defendants, or any of them, reside or are found without respect to the amount in controversy, and shall recover a penalty of three-fold the damages which may be sustained, together with the costs of suit, including a reasonable attorney's fee."[7]

As elucidated in § 24-1-2-7, *supra,* the legislature has conditioned the ability to sue for and recover treble damages on

---

6. § 24-1-2-1 is substantially patterned after § 1 of the federal Sherman Anti-Trust Act, 15 U.S.C.A. § 1 (1970).

7. § 24-1-2-7 is substantially patterned after § 4 of the federal Clayton Act, 15 U.S.C.A. § 15 (1973) which states:

"Suits by persons injured; amount of recovery—Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Due to the dearth of Indiana decisional law under § 24-1-2-7, the similarity between § 24-1-2-7 and 15 U.S.C.A. § 15, and the policy considerations identical to both provisions, federal decisional law enunciated under 15 U.S.C.A. § 15, is of substantial value.

the allegation and proof of an injury to a person's "business or property" occasioned by anti-competitive conduct. This statutory "standing" requirement seeks to ensure that only those who have been, in fact, directly harmed, or those at whom an anti-trust violation is directly intended, may recover. *Productive Inventions* v. *Trico Products Corp.* (2d Cir. 1955), 224 F.2d 678, *cert. den.* 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956); *Zenith Vinyl Fabrics Corp.* v. *Ford Motor Co.* (E.D. Mich. 1973), 357 F.Supp. 133; Note, *Standing to Sue For Treble Damages Under Section 4 of the Clayton Act,* 64 COLUM. L. REV. 570 (1964) (hereinafter cited as *Standing to Sue*).

Given a fair reading, Citizens' complaint permits of evidence which would disclose "[t]he manner, nature, character and extent of the injury sustained and the facts from which injury accrues and upon which damages may be assessed as well as those with regard to the effect of the alleged violation upon plaintiff's business. . . ." *Beegle* v. *Thompson* (7th Cir. 1943), 138 F.2d 875, 881. The complaint is thus sufficient at this stage of the action to give "standing" insofar as an injury to business or property is concerned.[8] *Radiant Burners, Inc.* v. *Peoples Gas & Light & Coke Co.* (1961), 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358; *Beegle* v. *Thompson, supra; Data Digests, Inc.* v. *Standard & Poor's Corp.* (S.D. N.Y. 1967), 43 F.R.D. 386; *Hutchinson* v. *American Oil Co.* (E.D. Pa. 1963), 221 F.Supp. 728.

Similarly, paragraph 9 of the complaint sufficiently asserts a direct causal connection between Defendants' alleged illegal acts and the injury sustained by Citizens. *Zenith Vinyl Fabrics Corp.* v. *Ford Motor Co., supra; Standing to Sue, supra,* at 575-76.

Finally, Defendants direct our attention to a line of cases holding that anti-trust action plaintiffs who hold only an

---

8. We do not imply that the statutory anti-trust "standing" requirement is a pleading requirement in derogation of the otherwise broad notice-pleading rules of Indiana and of the federal practice. *See* Part III (C) *infra.*

expectancy of entering a business have no legal right or interest protected under the Act and, therefore, lack standing to assert their claim. *See Martin* v. *Phillips Petroleum Co.* (5th Cir. 1966), 365 F.2d 629; *Peller* v. *International Boxing Club* (7th Cir. 1955), 227 F.2d 593; *Broadcasters, Inc.* v. *Morristown Broadcasting Corp.* (N.J. 1960), 185 F.Supp. 641. However, these cases are not in contra-distinction to the prevailing view that assertion of anti-trust liability is not limited to existing and ongoing business enterprises. As was cogently stated in *Denver Petroleum Corp.* v. *Shell Oil Co.* (Colo. 1964), 306 F.Supp. 289, 307:

"We reject the view that section 4 affords a remedy only to those having an actual going business. While there are decisions which appear to accept such an approach, *see Duff* v. *Kansas City Star Co.*, 299 F.2d 320 (8th Cir. 1962); *La Rouche* v. *United Shoe Mach. Corp.*, 166 F.Supp. 633 (D. Mass. 1958), we concur in the following statement from *Delaware Valley Marine Supply Co.* v. *American Tobacco Co.*, 184 F.Supp. 440, 443 (E.D. Pa. 1960), *aff'd. on other grounds*, 297 F.2d 199 (3d Cir. 1961), *cert. denied*, 369 U.S. 839, 82 S.Ct. 867, 7 L.Ed.2d 843 (1962):

'Defendant's argument necessarily presupposes that when Congress authorized treble damage suits it meant to distinguish between the rights of persons who are put out of business and the rights of persons who are kept out of business by a conspiracy. It is unreasonable to suppose that such a distinction was intended by Congress. The purpose of the anti-trust laws is to promote competition and to prevent its restraint. This purpose is no less thwarted when a person who intends and is prepared to embark in trade is stopped at the outset, than it is when a going business is brought to a standstill. It is as unlawful to prevent a person from engaging in business as it is to drive him out of business. The restriction which defendants would place upon the meaning of the word "business" is unwarranted in the context of its Clayton Act usage. (Citations omitted.)'

"A succinct, and to this day accurate, statement of the law is found in *American Banana Co.* v. *United Fruit Co.*, 166 F. 261, 264 (2d Cir. 1908), *aff'd. on other grounds*, 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909):

'Now, in order to state a cause of action for damages under the statute, it is not necessary, to aver an injury

to an existing business. As stated by this court * * *, "it is as unlawful to prevent a person from engaging in business as it is to drive a person out of business." But it is necessary to state facts showing an intention and preparedness to engage in business. (Citations omitted.)'" *See also Waldron* v. *British Petroleum Co.* (S.D. N.Y. 1964), 231 F.Supp. 72.

The *Denver Petroleum* court in elaborating upon the requirement of "intention and preparedness to engage in business," then posited:

"Numerous subsequent cases have followed these principles and particularly the requirement that there be an intention and a preparedness to enter the particular business activity. *Martin* v. *Phillips Petroleum Co.*, 365 F.2d 629 (5th Cir.), *cert. denied*, 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d 451 (1966) ; *Volasco Products Co.* v. *Lloyd A. Fry Roofing Co.*, 308 F.2d 383 (6th Cir. 1962), *cert. denied*, 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963) ; *Triangle Conduit & Cable Co.* v. *National Elec. Prod. Corp.*, 152 F.2d 398 (3d Cir. 1945) ; *Waldron* v. *British Petroleum Co.*, 231 F.Supp. 72 (S.D. N.Y. 1964) ; *Delaware Valley Marine Supply Co.* v. *American Tobacco Co., supra; Brownlee* v. *Malco Theatres Inc.*, 99 F.Supp. 312 (W.D. Ark. 1951).

\* \* \*

"Among the relevant factors are the background and experience of the principals, including their previous successes or failures in the same or a related business as well as possession of the requisite skills and abilities. A major consideration is the financial capability of the enterprise, which encompasses the extent of investment and the ability to finance operations and to make necessary purchases. Also essential is the taking of substantial affirmative action toward entry; there must be actual and substantial efforts toward the intended end. This broad category obviously encompasses much, such as the consummation of relevant contracts and procurement of necessary facilities and equipment." 306 F.Supp. at 307-8.

Applying these factors to the instant case,[9] we note that Citizens' directors were experienced in the field of banking. The Federal District Court opinion indicates that Citizens

---

9. *Martin* v. *Phillips Petroleum Co., supra*, instructs us that, for purposes of this inquiry, it is irrelevant whether we view the entry by Citizens into the Marion market as a new business by Citizens or an expansion by Citizens of its Van Buren operation.

had already acquired a building in Marion which would serve as its headquarters. Clearly, substantial affirmative action was taken by Citizens with the intent to do business in Marion. There is no indication, nor have Defendants contended, that Citizens lacked the financial capability to open an office in Marion.

Citizens may or may not be able to prove by a preponderance of evidence an intent and preparedness to enter the banking business in Marion. The complaint alleges past banking experience, i.e., operation as a state bank. Such allegation coupled with Citizens' application to the Comptroller is sufficient to be considered an allegation of intention and preparedness so as to withstand dismissal under the limiting rule of *Martin, supra; Peller, supra; and Broadcasters, supra.*[10]

We accordingly hold that the trial court improperly granted the Defendants' dismissal motion insofar as it was based on Citizens' assumed failure to show an injury to a protected right or interest.

(B)   ALLEGATION OF PUBLIC INJURY OR UNREASONABLE RESTRAINT OF TRADE UNNECESSARY

The trial court sustained Defendants' motions to dismiss on the ground, *inter alia,* that Citizens failed to allege public injury or unreasonable restraint of trade.

At one time, anti-trust plaintiffs bringing a private action for treble damages had an additional burden of alleging and proving a public, as well as private, injury. *See, e.g., Kinnear-Weed Corp.* v. *Humble Oil & Ref. Co.* (5th Cir. 1954), 214 F.2d 891, *cert. den.,* 348 U.S. 912

---

10.  It should be noted that neither party below has addressed on appeal the question of the nature of the preliminary approval granted by the Comptroller in October of 1966. In fact, the complaint does not characterize the approval as "preliminary", but rather states that "pursuant to adjudicatory procdures, the Comptroller of the Currency of the U. S. granted to and approved plaintiff's applications. . . ." There is no indication whether the approval, if "preliminary", created any rights in Citizens or whether solely ministerial functions remained to be performed. See 12 C.F.R. § 4.2(c) (1975).

(1955). However, this requirement has been rejected by the United States Supreme Court and no longer retains vitality. *Radiant Burners, Inc.* v. *People's Gas Light & Coke Co., supra; Radovich* v. *National Football League* (1957), 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456.

(C) COMPLAINT IS NOT LIMITED TO ALLEGED ACTS OF DEFENDANTS IN OPPOSING COMPTROLLER AUTHORIZATION OR IN SEEKING FEDERAL COURT INJUNCTIVE RELIEF

We have already stated our conclusion that the trial court erred in granting Defendants' motions to dismiss insofar as that decision was based on findings that Citizens failed to allege an injury to a protected right or interest or that Citizens failed to allege a public injury. We also conclude that the trial court could not properly have granted Defendants' motions on other grounds stated by the trial judge as bases for his ruling. The key determination upon which this last conclusion rests involves the proper construction of Citizens' complaint.

The trial court apparently discounted or ignored paragraph 6 of the complaint, which alleges that the Defendants, in addition to objecting before the Comptroller and bringing the District Court action, did ". . . other acts and things in furtherance of their objective. . . ." The trial court also apparently concluded that a plaintiff's complaint must be tested for the likelihood of proof of each essential element of the cause of action alleged. Indiana law compels us to be more sympathetic to a complaint challenged for its sufficiency than Defendants would like us to be. As was stated by the Indiana Supreme Court in *State* v. *Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604, 606:

> "This Court has noted that in a typical 12 (B) (6) situation, a complaint is not subject to dismissal unless it *appears to a certainty* that the plaintiff would not be entitled to relief under *any set of facts*. *Sacks* v. *American Fletcher National Bank and Trust Co.* (1972), [258] Ind. [189], 279 N.E.2d 807. *See also Gladis* v. *Melloh* (1971), [149] Ind. App. [466], 273 N.E.2d 767; *Wyant* v. *Lobdell* (1972), [150] Ind. App. [675], 277 N.E.2d 595.

The rules do *not* require that the complaint state all the elements of a cause of action. It must be remembered that our new rules are based on so-called notice pleadings in which a plaintiff essentially need only plead the operative facts involved in the litigation. Other means less drastic than dismissal of the action can be used to clarify the theory and basis for the cause of action. Among these are a Motion for a more definite statement under TR. 12(E), our very broad discovery rules, and the pre-trial conference under TR. 16(A)(1). We might note that certain cases from the Court of Appeals apparently state that the plaintiff is required to state in his complaint the theory upon which his claim is based. See, for instance, *Cheathem* v. *City of Evansville* (1972), [151] Ind. App. [181], 278 N.E.2d 602. Although a statement of the theory may be highly desirable, it is not required. When no evidence has been heard or no affidavits have been submitted, a 12(B)(6) motion should be granted only where it is clear from the *face* of the complaint that under no circumstances could relief be granted." (Original emphasis.) *See also Gentry* v. *United Slate, Tile & Construction Roofers, etc.* (1974), 162 Ind. App. 246, 319 N.E.2d 159; *Roberts* v. *State* (1974), 159 Ind. App. 456, 307 N.E.2d 501.

In determining whether "it is clear from the *face* of the complaint that under no circumstances could relief be granted," *State* v. *Rankin, supra,* this court is obliged to view the complaint "in the light most favorable to the plaintiff, with *every* intendment regarded in his favor. . . ." *Farm Bureau Insurance Co.* v. *Clinton* (1971), 149 Ind. App. 36, 269 N.E.2d 780, 783 (emphasis supplied).

We have been able to discover no Indiana case applying the general principles set forth above to anti-trust claims in particular. We look to federal authority for guidance therefore since the liberal "notice pleading" concept which underlies our own Rules of Procedure is also prevalent under the Federal Rules of Civil Procedure, *see, e.g., Scheuer* v. *Rhodes* (1974), 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90; *Conley* v. *Gibson* (1957), 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; *compare State* v. *Rankin, supra; Sacks* v. *American Fletcher National Bank* (1972), 258 Ind. 189, 279 N.E.2d 807, and since, as already stated, the Indiana anti-trust statute, insofar as here pertinent, closely resembles the federal anti-trust statutes.

While at one time some federal courts held that greater specificity of pleading was required for federal anti-trust claims, this view no longer prevails. In a well reasoned and persuasive opinion, *Nagler* v. *Admiral Corporation* (1957 2d Cir.), 248 F.2d 319, 322-323, the Second Circuit observed that anti-trust cases do not constitute a special exception to the liberal "notice pleading" which underlies the Federal Rules:

> "It is true that antitrust litigation may be of wide scope and without a central point of attack, so that defense must be diffuse, prolonged, and costly. So many defense lawyers have strongly advocated more particularized pleading in this area of litigation, and recently the judges in the court below have treated it as accepted law that some special pleading—the extent is left unclear—is required in antitrust cases. But it is quite clear that the federal rules contain no special exceptions for antitrust cases. When the rules were adopted there was considerable pressure for separate provisions in patent, copyright, and other allegedly special types of litigation. Such arguments did not prevail; instead there was adopted a uniform system for all cases—one which nevertheless allows some discretion to the trial judge to require fuller disclosure in a particular case by more definite statement, F.R. 12(e), discovery and summary judgment, F.R. 26-35, 56, and pre-trial conference, F.R. 16."

We likewise perceive no basis in the Indiana Rules of Civil Procedure for imposition of stricter standards upon the pleading of state anti-trust claims than upon other claims.

In light of our conclusion as to the proper principles governing construction of Citizens' complaint, we cannot accept Defendants' invitation to disregard paragraph 6 of the complaint. We need not speculate at this point what manner of acts independent of the attempts to prevent authorization, as alleged under paragraph 6 may have been committed by Defendants in seeking to bar Citizens from Marion. But it is not at all clear at this point "from the *face* of the complaint that under no circumstances could relief be granted" as to the allegations in paragraph 6. Hence absent further pleading, Citizens is entitled to undertake to prove overt acts independent of the objections to the Comptroller's authorization

and the District Court action and notwithstanding the generality of the allegation in paragraph 6. *See, e.g., Sundstrand* v. *Standard Kollsman Industries* (7th Cir. 1973), 488 F.2d 807. Any objections Defendants have to the lack of specificity of the allegation in paragraph 6 should have been presented in a TR. 12(E) motion for more definite statement or may be resolved in discovery procedures or pre-trial conference. *See State* v. *Rankin, supra;* 1 Harvey, *Indiana Practice,* § 12.2, p. 606 (1969).

(D)   COMPLAINT NOT SUBJECT TO DISMISSAL AS VIOLATIVE OF STATUTE OF LIMITATIONS

One of the grounds upon which the trial court dismissed Citizens' complaint was that the action was barred by the applicable statute of limitations. In so doing, the trial court apparently accepted Defendants' position that the applicable statute of limitations is Ind. Ann. Stat. § 34-1-2-2 (Burns Code Ed. 1973), which provides for a two year period "for a forfeiture of penalty given by statute." Even if that be the proper statute of limitations, it was error to dismiss the complaint on this ground in light of our conclusion that Citizens is entitled to offer proof in support of its allegation in paragraph 6 of the complaint.

A complaint attacked by a TR. 12(B)(6) motion on the ground that the action is barred by the applicable statute of limitations is subject to dismissal only if the complaint shows *on its face* that the action is thus barred. *American States Insurance Co.* v. *Williams* (1972), 151 Ind. App. 99, 278 N.E.2d 295. The federal courts have held that the statute of limitations in anti-trust cases commences with the last overt act in furtherance of the anti-trust conspiracy. *Hazeltine Research Inc.* v. *Zenith Radio Corp.* (7th Cir. 1969), 418 F.2d 21; *Northern Ky. Bell Telephone Co.* v. *Southern Bell Telephone & Telegraph Co.* (6th Cir. 1934), 73 F.2d 333. Defendants, arguing that the only overt acts of the alleged anti-competitive conspiracy were those involved in pursuing their federal lawsuit, contend that the

resolution of that litigation on June 25, 1968, started the running of the two-year statute of limitations. But, since we hold that Citizens is entitled to show overt acts on the part of Defendants which are entirely independent of the federal litigation, it may be that Citizens could prove the commission of overt acts taking place after June 25, 1968. The only date apparent from the face of the complaint after which defendants could not possibly have committed overt acts in furtherance of the conspiracy is March 2, 1970, the date Citizens finally opened their bank in Marion. Even if Defendants are correct that a two-year statute of limitations applies to this action, we must construe the complaint in Citizens' favor, *Farm Bureau Insurance Co.* v. *Clinton, supra.* We therefore cannot presume that the statute of limitations began to run before March 2, 1970. If the statute did not begin to run until March 2, 1970, then Citizens had until March 2, 1972 to file a complaint. It was filed on February 18, 1971.

Thus, the complaint does not show *on its face* that the claim is barred by the statute of limitations. Subsequent evidence may reveal that the "last overt act" occurred at a date earlier than March 2, 1970, but the complaint does not mandate such a finding at this time.

## (E)  COMPLAINT NOT SUBJECT TO DISMISSAL ON FIRST AMENDMENT GROUNDS

One ground upon which the trial judge based his dismissal of the complaint was his acceptance of Defendants' theory that in bringing the federal suit, they were petitioning the government for redress of their grievances. Defendants claim that the activities for which Citizens seeks to penalize them are protected by the first amendment to the United States Constitution. This argument is commonly called the *Noerr-Pennington* defense deriving its name from the landmark cases of *Eastern R. R. Presidents Conference* v. *Noerr Motor Freights, Inc.* (1961), 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464, *reh. den.* 365 U.S. 875, 81 S.Ct. 899, 5 L.Ed.2d 864, and *United Mine Workers of America* v. *Pennington* (1965), 381

U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626. The essence of the *Noerr-Pennington* defense was stated by the United States Supreme Court in *California Motor Transport Co.* v. *Trucking Unlimited* (1972), 404 U.S. 508, 510-511, 92 S.Ct. 609, 612, 30 L.Ed.2d 642-646:

> "We conclude that it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and the procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors." *See also Harman* v. *Valley National Bank of Arizona* (9th Cir. 1964), 339 F.2d 564; Costilo, *Antitrust's Newest Quagmire: The Noerr-Pennington Defense,* 66 Mich. L. Rev. 333 (1967).

Defendants' assertion that the *Noerr-Pennington* doctrine bars Citizens' action is untenable, however, since here, unlike in *Noerr, supra,* the complaint before us does not plead damages arising solely from Defendants' "governmental activities" before the Comptroller and in the District Court, but also avers injury from "other acts and things in furtherance of their objective" to unlawfully prevent Citizens "from entering into the banking business of Marion and its environs". Summary dismissal on the basis of the *Noerr-Pennington* doctrine is therefore inappropriate. The plaintiff is entitled to offer proof of the "non-governmental" aspects of the unlawful conspiracy which could, standing alone, subject the defendant to liability under the anti-trust statute.[11] *See Pennington, supra; Harman, supra.*

---

11. We do not intend to imply that the vitality of Citizens' action in the face of the *Noerr-Pennington* defense rests solely on proof of the allegations in paragraph 6. Citizens may be able to bring its action within the "sham" exception to the *Noerr-Pennington* defense, as outlined in *Trucking Unlimited, supra,* by demonstrating that Defendants' "governmental activities" were a mere pretext for the unlawful acts of an anti-competitive conspiracy. But since, unlike in *Trucking Unlimited, supra,* the complaint does not rely solely on Defendants' "governmental activities" to state its claim for relief, the "sham" exception is not before this court. *Compare Sierra Club* v. *Butz* (N. D. Cal. 1972), 349 F. Supp. 934; *L. G. Semke d/b/a Semke Auto Mart* v. *Enid Automobile Dealers Assoc.* (10th Cir. 1972), 456 F.2d 1361.

It is therefore our opinion that, under the issues here defined, the complaint is not subject to dismissal under the *Noerr-Pennington* doctrine.

## (F) PRIOR FEDERAL DETERMINATION IS NOT GROUNDS FOR DISMISSAL OF THE COMPLAINT

The trial court's reliance upon res judicata, collateral estoppel, recovery limited to the amount of the bond in the prior action, collateral attack on a prior judgment, and failure to assert a compulsory counterclaim as bases for dismissal was erroneous in light of our view of the proper construction of the complaint. The questions thus presented are similar to that previously answered: Will the complaint allow proof of facts which will establish a cause of action not subject to these bars?

It is clear that the "claim" involved in the prior federal litigation is not the same with which we are here concerned. It is true that if Citizens could have asserted the claim in the prior litigation, it may now be barred, either under the doctrine of res judicata or failure to assert a compulsory counterclaim. *See Commissioner of Internal Revenue* v. *Sunnen* (1948), 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; *Gila Bend Reservoir & Irrigation Company* v. *Gila Water Company* (1907), 205 U.S. 279, 27 S.Ct. 495, 51 L.Ed. 801; Ind. Rules of Procedure, Trial Rule 13(a). However, the complaint does not reveal on its face that Citizens could have raised the claim in the prior litigation. Citizens under paragraph 6 of its complaint may prove facts which occurred after the federal trial. It cannot be stated therefore that the federal litigation precludes consideration of such subsequent facts.

The arguments that the present action is a collateral attack on a prior judgment and is limited in recovery to the bond furnished in obtaining the injunction, are simply another example of an attempt by Defendants to re-define Citizens' complaint. It is not limited to the act of Defendants in bringing the prior litigation. The existence of the prior litigation

cannot absolve Defendants from liability for all anti-competitive acts which may have taken place subsequently.

As to collateral estoppel, it may well be that certain issues are precluded from consideration in the present case. However, it does not appear to us that any of those issues are essential to the validity of the complaint, as previously analyzed.

It is therefore our opinion that error was committed in granting the motions to dismiss. In so holding, we intend no implication as to whether or not the cause at a later stage will withstand a motion for summary judgment. Nor do we suggest that Citizens must necessarily establish new facts under the general paragraph 6 of the complaint in order to maintain its action. Our only holding is that dismissal of the complaint was not proper at the time granted under the pleadings before the trial court.

The simple fact is that the present case is not now in a posture conducive to a determination as a matter of law that Citizens is not entitled to continue the action. It is unfortunate that so much judicial time and energy has been expended without determining whether the facts as alleged live up to *Citizens' legal expectations.* As one court stated apropos of the case under consideration:

> "*The salvaged minutes that may accrue from circumventing* [pretrial conference, discovery, motions for a more definite statement, judgment on the pleadings, and summary judgment] *can turn to wasted hours if the appellate court feels constrained to reverse the dismissal of an action.*" (Emphasis supplied). *Rennie & Laughlin, Inc.* v. *Chrysler Corp.* (9th Cir. 1957), 242 F.2d 208, 213.

It is hoped that the parties will now contribute their best efforts toward bringing this litigation to a swift conclusion.

The judgment is reversed and the cause remanded to the Wells Circuit Court for further proceedings not inconsistent with this opinion.

Buchanan and White, JJ., concur.

NOTE.—Reported at 331 N.E.2d 471.